Constance Slocum, Richard Wilson, Glendeen Bragg, Stephen Yates and Marjorie Kimber v. Department of Social Welfare

Cindy Clark v. Department of Social Welfare

[580 A.2d 951]

Nos. 88-338 & 88-589

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed June 29, 1990

476

*John J. McCullough III*, Vermont Legal Aid, Inc., Montpelier, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Jane Elizabeth Gomez* and *Donelle Staley*, Assistant Attorneys General, Waterbury, for Defendant-Appellee.

**Allen, C.J.** Petitioners appeal from a decision of the Human Services Board (Board) authorizing the Department of Social Welfare (DSW) to recover from Supplemental Security Income (SSI) awards, General Assistance (GA) benefits paid by DSW. We reverse and remand.

SSI is a federally funded and operated program with its own disability and financial eligibility requirements. In 1974, Congress amended the Social Security Act to enable the Social Security Administration (SSA) to pay retroactive awards of SSI benefits directly to the states in order to reimburse the states for "interim assistance," known in Vermont as GA.[1] See 42 U.S.C. § 1383(g)(3); 20 C.F.R. § 416.1902.

GA is a program operated, regulated and funded solely by the State of Vermont. The program provides financial assistance to individuals unable to support themselves by working and who do not qualify for other benefits.

The facts were not in dispute, and thus the cases were consolidated on appeal. In each case, petitioners applied for SSI and received GA in the interim while their applications were pending. Upon the approval of their SSI applications, the Social Security Administration transmitted the full retroactive SSI award to DSW. DSW, in turn, deducted the amount of GA paid to the petitioners, and forwarded them the remainder. In each case, DSW reimbursed the state for benefits paid more than two years before the date of the SSI award.

This dispute concerns the proper interpretation of W.A.M. (Welfare Assistance Manual) § 2600d. At the time of the fair hearing, the regulation provided:

> General Assistance shall be furnished with the understanding that when a recipient subsequently acquires benefits or resources in any amount from: an inheritance; cash prize; sale of property; retroactive lump sum Social Security, Supplemental Security Income/Aid to Aged, Blind and Disabled [SSI/AABD], Veterans, or Railroad Retirement Benefits; or court awards or settlements; he shall be required to make reimbursement for that amount of aid furnished during the previous two years.

> The GA applicant who is also an SSI/AABD applicant must sign a Recovery of General Assistance Agreement . . .

---

[1] DSW entered into an "interim assistance agreement" with the Secretary of Health, Education and Welfare (now Health and Human Services) to authorize DSW to receive directly reimbursements for GA paid to SSI applicants who had given written authorization for such payments.

which authorizes SSA to send the initial check to this department so that the amount of General Assistance received can be deducted. The deduction will be made regardless of the amount of the initial SSI/AABD check. Any remainder due the SSI/AABD recipient shall be forwarded to him within 10 days. The deduction shall be made for General Assistance issued during the period from the first day of the month of the SSI/AABD eligibility to the date the remainder of the initial SSI/AABD check is mailed by the Department to the recipient.

Petitioners argue that the last clause of the first paragraph controls, and, therefore, § 2600d limits the reimbursement to GA payments made within two years of the SSI award. DSW claims that the Board properly deferred to the agency's interpretation of its own regulation by ruling that the last sentence of the second paragraph authorizes DSW to reimburse the state for all GA payments issued to the recipient, not only for those benefits awarded within the previous two years.

■ When construing an administrative rule or regulation, we use the same rules that we use in construing a statute. See *Blundon v. Town of Stamford*, 154 Vt. 227, 229, 576 A.2d 437, 439 (1990) (zoning ordinances). In so doing, the primary rule is to give language its plain, ordinary meaning. *In re Hydro Energies Corp.*, 147 Vt. 570, 573, 522 A.2d 240, 242 (1987). When ambiguity renders the plain meaning rule unavailing, we turn to other aids of statutory construction. See *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). We also look to the agency itself, because an administrative agency's interpretation of its own regulation is usually given great weight. See *Bishop v. Town of Barre*, 140 Vt. 564, 577, 442 A.2d 50, 56 (1982).

■ An apparent conflict exists between the first and second paragraphs of § 2600d, and thereby creates an ambiguity that defies the application of the plain meaning rule. Examination of the legislative history discloses that § 2600d was promulgated to effectuate 33 V.S.A. § 3075, which authorizes the state to recover GA payments whenever the recipient "owns or thereaf-

ter acquires real or personal property or an interest therein or becomes employed." DSW responded with § 2600 in 1971. The regulation set forth in general terms the obligation of the GA recipient to reimburse the state out of after-acquired property or income. Therefore, neither the statute nor the regulation in its original form placed time limitations on the recovery of GA benefit payments.

In 1974, DSW adopted a new regulation which specified the types of income, resources, or benefits from which it could seek reimbursement, and included Social Security Income in that delineation.[2] With respect to the rights and responsibilities of the recipient, § 2600 did not differentiate among the sources listed. The regulation also imposed for the first time a two-year limitation on the recovery of GA payments. Therefore, from its inception in 1974, the two-year time limitation applied to SSI awards.

W.A.M. § 2600 underwent further change in 1976 in response to Congress' amendment of the Social Security Act that enabled the states to deduct directly from SSI awards the amount of GA disbursed. See 42 U.S.C. § 1383(g). At that time, DSW added the second paragraph to the regulation. The first paragraph, however, was also revised to include AABD among the list of benefits requiring reimbursement and to eliminate the $500 minimum reimbursement requirement.

After the initiation of petitioners' cases, DSW amended the regulation again in 1987 to delete SSI/AABD awards from paragraph one, which contains the two-year limitation. Hence, these appeals concern only the recovery of benefits under the regulation in effect before the 1987 amendment.

■ DSW asserts that the intent of § 2600d was to enable it to recover from SSI recipients the total amount of GA awarded

---

[2] The 1974 promulgation of § 2600 provided:

> General Assistance shall be furnished with the understanding that when a recipient subsequently acquires benefits or resources in the amount of $500.00 or more from an inheritance; cash prize; sale of property; retroactive lump sum Social Security, Supplemental Security Income, Veterans or Railroad Retirement payment; or in or out of court awards or settlements; he shall be required to make reimbursements for the amount of aid furnished during the previous two years.

as measured from the first day of SSI eligibility to the date of the SSI award, regardless of whether that period exceeded two years. To resolve the regulation's apparent conflict, DSW relies primarily on the "last enactment rule." This canon of statutory construction instructs that where two statutes on the same subject irreconcilably conflict, the more recent legislative enactment will control. See *State v. Lynch*, 137 Vt. 607, 610, 409 A.2d 1001, 1003 (1979). DSW argues that the second paragraph of § 2600d was promulgated after the first paragraph, which contains the two-year limitation, and hence allows the recovery of all GA benefits disbursed during the SSI eligibility period.

The last-enactment rule, however, does not apply to this case.[3] See *State v. Desjardins*, 144 Vt. 473, 475, 479 A.2d 160, 161 (1984) (rules of statutory construction are not talismans, but merely interpretation aids to be disregarded in the appropriate case). Although the development of the first paragraph predates the second by approximately two years, the 1976 bulletin which introduced the second paragraph actually set forth the full regulation in its entirety, including the first paragraph. In fact, the 1976 amendment made two substantive changes in the first paragraph: the amendment removed the $500 minimum requirement and added "Aid to the Aged, Blind and Disabled" to the sources of income from which DSW could seek reimbursement. Therefore, rather than resort to the rule of last enactment, we think it more appropriate in this case to apply the "rule of reenacted provisions." This principle holds that the "[p]rovisions of the original act or section which are repeated in the body of the amendment . . . are considered a continuation of the original law. . . . Thus, rights and liabilities accrued under the provisions of the original act which are reenacted are not affected by the amendment." 1A N. Singer, Sutherland Statutory Construction § 22.33, at 287–88 (4th ed. 1985).

---

[3] We also reject DSW's claim that the second paragraph constitutes the more specific provision, and as such, should control over the more general first paragraph. We agree with the Human Services Board that both paragraphs specify SSI by name as being covered by their provisions, and therefore "neither paragraph here easily lends itself to a 'general' label."

■ ■ The rule of reenacted provisions reflects the presumption that all language in a statute or regulation is inserted for a purpose. See *State v. Racine*, 133 Vt. 111, 114, 329 A.2d 651, 654 (1974). Accordingly, we consider the regulation as a whole, and strive where possible to give effect to every word, clause, and sentence. *State v. Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980). Viewed in light of the legislative history, analysis of the regulation's language indicates that the two paragraphs can and should be harmonized. See *St. Gelais v. Walton*, 150 Vt. 245, 248, 552 A.2d 782, 784 (1988) (Supreme Court's duty is to harmonize wherever possible apparently conflicting sections of the same legislative act). Beginning in 1974, the first paragraph established that a recipient who received income or benefits from the listed sources—including SSI—would have to repay GA received during the previous two years. The promulgation of the 1976 amendment, contrary to DSW's assertion, does not indicate that the agency intended to treat SSI differently from any of the other delineated sources of income. The 1976 amendment added the second paragraph and altered the first paragraph to include AABD within the list of sources, which already contained SSI. The addition of AABD manifests an intent to continue to apply the two-year recovery limitation to SSI, and to treat AABD the same way.

This conclusion is supported by the DSW transmittal bulletin that accompanied the 1976 amendment. In reference to the first paragraph, the bulletin stated that "[t]his proposed regulation specifies that a recipient must repay assistance received during the previous two years if benefits or resources in any amount are subsequently acquired from certain named sources." With respect to paragraph two, the bulletin merely remarked that those applying for both GA and SSI/AABD had to sign a Recovery of General Assistance Agreement. Neither the language of the regulation nor the transmittal bulletin warrants the inference that, with the 1976 amendment, DSW intended to remove SSI awards from the two-year limitation of paragraph one.

DSW would have this Court disregard the listing of SSI among those resources and benefits subject to the two-year limitation. We think, however, that the retention of SSI on the list

was not the result of oversight. The 1976 amendment was not intended to increase the SSI recipient's liability for GA payments; rather, § 2600d continued to treat all the listed sources the same. The second paragraph served to establish a means of collecting the GA reimbursement and a method of calculating the amount due—subject, however, to the two-year limitation. We decline to treat the first paragraph's reference to SSI as mere surplusage. See *Weissenstein v. Burlington Board of School Commissioners*, 149 Vt. 288, 292, 543 A.2d 691, 693 (1988) (where statutory provisions conflict, interpretations that harmonize and give effect to both are favored).

DSW points out that, since the promulgation of the 1976 amendment, it has never applied the two-year limit to its recovery of GA benefits from SSI awards. Given this consistent application, the agency contends that this Court should defer to its interpretation of § 2600d. The examination of DSW's interpretation of § 2600d has proven to be something less than illuminating. Though DSW authored the regulation in issue, its explanation of § 2600d is markedly incomplete. The crux of the dispute turns on the applicability of the two-year limitation, yet DSW concedes in its brief that the "intent behind the two-year limitation is unknown." Despite the great weight usually accorded to an agency's interpretation of its own regulations, this Court will disregard that interpretation where it is plainly erroneous or inconsistent with the regulation. *Cronin v. Department of Social Welfare*, 145 Vt. 187, 188, 485 A.2d 1253, 1254 (1984). For the reasons previously discussed, we hold that DSW's interpretation of § 2600d is inconsistent with the regulation. See *In re Peel Gallery of Fine Arts*, 149 Vt. 348, 351, 543 A.2d 695, 697 (1988) ("administrative agency must abide by its regulations as written until it rescinds or amends them"). The two-year time limitation applies to the recovery of GA benefits from SSI awards.

Lastly, we reject the agency's assertions that this result is irrational, unjust and unconstitutional. DSW identifies as the source of the alleged constitutional defect the potential for some persons to receive a double benefit by retaining GA bene-

fits paid more than two years before the SSI award, while those who fall within the "arbitrary" two-year limitation must reimburse DSW completely for GA benefits, and hence receive only SSI. Rather than treating SSI recipients differently, the resolution of this case applies the two-year limitation to SSI awards in the same manner as it does to all the other sources listed in the first paragraph of § 2600d. Thus, if the possibility of a double benefit for SSI recipients flaws this decision, then the entire regulatory scheme of § 2600d suffers a similar infirmity—a position that DSW has not taken. DSW amended § 2600d in 1987 to delete the first paragraph's reference to SSI. Therefore, with respect to the other listed sources, the two-year limitation remains, and with it, the possibility of double benefits. Simply put, a regulatory scheme does not lack rationality when it restricts how far back an agency can reach to recover benefits paid to the needy and long-since spent.

*Reversed.*