### In re Vermont National Bank

[97 A.2d 317]

No. 90-010

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ.**

Opinion Filed August 23, 1991

*Susan Gilfillan* and *Linda R. LeRoy* of *McNeil & Murray*, Burlington, for Appellant.

*Richard A. Spokes* of *Spokes, Foley & Peterson*, Burlington, for Appellee.

*Harvey D. Carter, Jr.*, Burlington, for amicus curiae Preservation Trust of Vermont.

*Jeffrey L. Amestoy*, Attorney General, and *William E. Griffin*, Chief Assistant Attorney General, Montpelier, for amicus curiae Division of Historic Preservation.

**Dooley, J.** The City of Burlington appeals from an opinion and order of the Chittenden Superior Court awarding a certificate of appropriateness to the Vermont National Bank to modify the facade of its bank building to cover the glass curtain wall with bricks. The City argues that the trial court misconstrued the relevant section of the zoning ordinance and refused to consider critical facts that had developed since the project was rejected by the Burlington Planning Commission. We affirm.

The bank building is located at 150 Bank Street, within the central business district, and, therefore, within a design control district. In a design control district, structures may not be "substantially altered, or restored" without approval by the planning commission. Burlington Zoning Ordinance § 18. In reaching its decision, the planning commission must consult with a special design review board. *Id.* § 18(A)(1)(b). A number of general design criteria apply in any design control district. The criterion that is central to this dispute reads:

> (i) Heritage. With respect to Burlington's heritage, the removal or disruption of historic, traditional or significant uses, structures or architectural elements shall be minimized insofar as practicable, whether these exist on the site or on adjacent properties.

*Id.* § 18(D)(1)(i).

The ordinance also subjects to design review an area called the historic buildings district. This district covers specified areas of the City as well as sixty-five specified buildings. See *id.* § 18(D)(3)(g). In this district, the commission must consider specific design review criteria including:

> (a) The historic and/or architectural value and significance of the structure and its relationship to the historic and/or architectural value of the surrounding area.
>
> (b) The relationship of the exterior architectural features of the structure to the rest of the structure and to the surrounding area.

*Id.* § 18(D)(3)(a), (b). The bank building is not within the historic buildings district, both because it is not in any of the areas covered by the district and because it is not one of the separately-designated buildings.

The project first went for design review to the Burlington Planning Commission, which withheld approval because the

"structure is an historically significant building" and the modification "removes all significant architectural elements" of the structure. The Bank appealed to the Chittenden Superior Court.

The court found that Burlington architects Freeman, French and Freeman designed the bank building in 1958. It is an example of the "International Style." Its dominant feature is its front facade which is a one-quarter inch glass curtain wall composed of green and clear panels. The single-pane glass has minimal insulating capacity and has made it difficult to heat and cool the building. The panels leak and are difficult and expensive to repair. Attempts to alleviate the heating and cooling problems without changing the facade have proved unsatisfactory. In addition, the Bank maintains the facade is "cold, outdated and uninviting." The brick facade was chosen as the most suitable solution to the problems.

The building is in a transitional neighborhood, situated between a department store and a McDonald's restaurant. It is across the street from a newer bank building with a brick facade. The surrounding buildings do not share the architectural style of the bank building.

The City's first argument involves the court's consideration of evidence that the building was listed on the Vermont Register of Historic Places after the City denied the Bank a permit. Although the court admitted the registration evidence, it concluded:

> The building has only been in existence since 1958, and the court finds that it has not achieved local renown, and in fact that the opposite is true. . . . [N]either federal, state, nor local preservation authorities deemed the building to be architecturally significant until after the Bank filed an appeal of the denial of the Certificate of Appropriateness. The court is at a loss to understand why the same building which was not registered when the City was surveyed several years ago has suddenly been deemed worthy of such status. The court finds that 150 Bank Street has little or no significance to the traditional heritage of the City, and so it can be redesigned without endangering the preservation of the history of Burlington.

The City argues that the court improperly gave the Bank vested rights in the facts present when the City reviewed the project. Thus, according to the City, the court erroneously refused to consider the later registration on the Vermont Register of Historic Places. The City also argues generally that the court gave inadequate consideration to the registration.

■ We must first emphasize that the City's arguments go to evidentiary weight. The evidence of the registration was admitted over the objection of the Bank. Normally, the weight to be assigned to evidence lies within the discretion of the trial court. See *In re Duncan*, 155 Vt. 402, 409, 584 A.2d 1140, 1145 (1990) (findings, and conclusions based on the findings, upheld unless clearly erroneous).

The evidence in issue is the listing on the state registry of historic sites. The Vermont Advisory Council on Historic Preservation lists sites on the registry, consistent with state and federal standards. 22 V.S.A. §§ 723(a)(2), 742(a)(2). A property found to be "historic property" is eligible for listing. 22 V.S.A. § 701(6). A historic property is one defined as a "building, structure, object, district, area or site that is significant in the history, architecture, archeology or culture of this state [or] its communities." *Id.* The listing has no legal effect on local permitting, unless the local ordinance gives it some effect.

■ We agree with the City that a refusal to admit the evidence of listing on the registry would have been error. The superior court determines de novo appeals from actions of a local planning commission. 24 V.S.A. § 4472(a) (zoning board appeals de novo), § 4475 (planning commission appeals are "in the same manner" as zoning board appeals). As a result, the record of the planning commission hearing may be admitted as evidence, but the superior court is not restricted to that record. *Chioffi v. Winooski Zoning Board*, 151 Vt. 9, 11, 556 A.2d 103, 105 (1989). In some circumstances, the vested rights doctrine entitles the property owner to review under the law applicable when the owner properly applies for the permit, irrespective of later changes in the law. See *In re Ross*, 151 Vt. 54, 56–57, 557 A.2d 490, 491–92 (1989). The doctrine does not apply to fact and evidence questions. There was no change in the applicable law here. The occurrence of the registry listing after the original

permit request does not make it inadmissible or irrelevant in the superior court proceeding.

■ There is no indication, however, that the court concluded that the vested rights doctrine applied to the registry listing or that it failed to conduct a de novo review of the permit issues considering all relevant evidence. The court admitted the listing evidence despite the Bank's objection that it had a vested right to consideration based on the facts before the planning commission. The court acted within its discretion in deciding that the way in which the listing occurred, and its timing, affected the weight to be assigned to it. Although the City listed buildings of historic value in its historic buildings district and the Advisory Council on Historic Preservation had inventoried Burlington buildings, neither had identified the bank building as worthy of special protection. The building had not achieved any renown prior to this controversy. The registry listing occurred without notice to the Bank and without an opportunity for the Bank to present contravening evidence it later presented in court. Consideration of the building was evidently added as an item of new business by a Council member. The court could be skeptical about how the listing came about and consider that skepticism in assigning weight to the listing.

Other courts have emphasized the importance of careful survey work to develop a list of buildings worthy of protection from demolition or modification, with notice to the owner, prior to any development proposal. See *Maher v. City of New Orleans*, 516 F.2d 1051, 1063 (5th Cir. 1975). We note that our statute now requires notice to the owner and the local municipality before the Council lists a building on the state registry. 22 V.S.A. § 723(a)(11). These procedures make the process more fair and predictable and dispel suspicions that a party might raise historic preservation issues at the eleventh hour as an expedient to thwart an unwanted development.

In any event, the listing represented only the informed view of an influential group, reached under standards similar but not identical to those of the City ordinance, and not binding on the court. The court was entitled to give this view such weight as it determined was appropriate.

The second issue the City raised involves the trial court's construction of the relevant provision of the zoning ordinance.

The court responded to the Bank's attack on the "heritage" criterion of the general design review standards as unconstitutionally vague by construing the language as follows:

> The American Heritage Dictionary (Second College Edition 1982, p. 607) defines "heritage" in relevant part as "something passed down from preceding generations; tradition."
>
> Accordingly, the court construes the term "heritage" as used in § 18(D)(1)(i) in conjunction with the word "Burlington" to mean that the Section is concerned with preserving architecture which is traditional and meaningful to the City of Burlington, thus giving adequate notice to applicants of what the criterion means and that it will include an inquiry as to whether the structure in question is tied to the history and tradition of Burlington. Construed in this narrowed fashion, the court finds that the Section is not unconstitutionally void for vagueness.

The court found that the building "has little or no significance to the traditional heritage of the City." The City argues that the construction of the ordinance is erroneous because, by its terms, the ordinance extends protection to "significant . . . architectural elements" whether or not they are historic or traditional.

■■ In construing a zoning ordinance, we use the same rules as in the construction of a statute. See *Blundon v. Town of Stamford*, 154 Vt. 227, 229, 576 A.2d 437, 439 (1990). We construe words according to their plain and ordinary meaning. See *Slocum v. Department of Social Welfare*, 154 Vt. 474, 478, 580 A.2d 951, 954 (1990). We consider the whole of the ordinance and try to give effect to every part. *Id.* at 481, 580 A.2d at 956. In this process, we consider the title to the sections of the ordinance. See *Conn v. Town of Brattleboro*, 120 Vt. 315, 320, 140 A.2d 6, 9 (1958); *United States v. Bushey*, 617 F. Supp. 292, 296 (D. Vt. 1985). Overall, the standard of review of the trial court decision is whether it is "clearly erroneous, arbitrary, or capricious." See *Route 4 Assocs. v. Town of Sherburne Planning Comm'n*, 154 Vt. 461, 462, 578 A.2d 112, 113 (1990).

■ In this case, the trial court adopted a construction of the ordinance provision that relied heavily on the use of the term

"Heritage" in the title and the dictionary definition of the term. The use of the dictionary is an accepted way to arrive at the meaning of the language. See *id.* at 464, 578 A.2d at 114. Although one could interpret § 18(*l*)(1)(i) as protecting architecture with no historic or traditional value, the title, "[h]eritage," and the more precise distinction between historical and architectural value in later parts of the ordinance belie that construction. See Burlington Zoning Ordinance § 18(D)(3)(a). The City relies heavily on the use of the term "significant," but that term is vague and takes on its meaning from its context. There is no indication of a consistent interpretation of the provision by the local officials who administer it. Cf. *In re Duncan*, 155 Vt. at 408, 584 A.2d at 1144 (interpretation of zoning staff and board accepted absent compelling indication of error).

We conclude that the trial court's construction of the ordinance is reasonable and its decision is not clearly erroneous.

*Affirmed.*