## David SIMENDINGER and Wesco, Inc. v. CITY OF BARRE

[770 A.2d 888]

No. 98-144

January 8, 2001. The City of Barre appeals from a decision of the environmental court granting two conditional use permits to Wesco, Inc. and David Simendinger to convert an existing service-station garage to a convenience store and to alter the four existing gasoline dispensers, from full service to self-service in the first application, and from four to one dispenser in the second application. The City contends the court erroneously: (1) approved the conditional use applications without prior consideration by the City's zoning board of adjustment; (2) failed to give due consideration to the City's Master Plan and Economic Action Plan; (3) found that there was a need for the proposed use despite the presence of other convenience stores in the vicinity; and (4) construed the zoning ordinance to effectively preclude the regulation of single-dispenser gasoline service to the public. We reverse and remand.

Wesco and Simendinger (hereafter Wesco) own property at 169 Washington Street, an area zoned as a planned residential district. Washington Street, also known as Route 302, is a primary east-west route though the City. At its eastern end, where the subject property is located, it contains a mix of residential and commercial uses. The Wesco property contains an automobile repair garage and four full-service gasoline pumps. The garage and gasoline dispensers predate the zoning ordinance and qualify as a preexisting nonconforming structure and use within the district.

In November 1995, Wesco filed a conditional use application with the City to convert the garage to a convenience store and to convert the full-service pumps to self-service. Following a hearing in December, the City planning commission denied approval, finding that the proposed use would increase traffic and diminish safety, and that Wesco had failed to demonstrate a sufficient need for the use. Wesco submitted a second application in February 1996, seeking to convert the garage to what it now styled a neighborhood grocery store, to convert the four existing gasoline dispensers to one dispenser, and to add an overhead canopy. Following a hearing in April, the planning commission again withheld approval, finding that no need for the proposed use had been demonstrated, and that the proposed convenience store and canopy would alter the residential character of the neighborhood. The board of adjustment issued a brief decision the same day, indicating that the application had been denied based upon a lack of positive findings by the commission.

Wesco filed separate appeals from the denial of both applications with the environmental court, which consolidated the matters for hearing. At the conclusion of the evidentiary hearing, the court issued an oral ruling in favor of Wesco. In a subsequent written decision, the court noted preliminarily that under the City's zoning regulations, three positive rulings were required for the project. First, the proposal required approval from the planning commission under specific criteria for nonconforming or conditional uses in a planned residential district. Second, and following such approval, the proposal must receive conditional use review and approval from the board of adjustment. And finally, the proposal must receive site plan approval from the planning commission. The court observed that Wesco's applications had been warned for a hearing before both the planning commission and board of adjustment, and therefore concluded that it could sit as both bodies. Applying the criteria for preliminary review by the planning commission, the

court found that the proposals would not add a commercial use to the district, detrimentally affect the district's residents, or tangibly increase traffic, and would offer conveniences not offered by other convenience stores in the area. Sitting as the board of adjustment, the court also found that the proposal satisfied the criteria for conditional use review, but imposed certain conditions to mitigate glare from the canopy lighting, limit the hours of operation, and provide for gasoline deliveries during off-peak hours.[1] This appeal by the City followed.

## I.

The City contends the court erred in evaluating the element of "need" in connection with the planning commission's preapproval process. In reviewing matters on appeal, we set aside factual findings of the trial court only if they are clearly erroneous, viewing the evidence in the light most favorable to the prevailing party, and disregarding modifying evidence. See *Bianchi v. Lorenz*, 166 Vt. 555, 562, 701 A.2d 1037, 1041 (1997). "A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding." *Highgate Assocs., Ltd. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991).

In addressing the criterion of need, the trial court expressly cited the pertinent provision of the City's zoning ordinance which requires consideration of "the need for the [proposed] use in the district primarily and the City of Barre secondarily." Although the court acknowledged that there were several existing convenience stores within reasonable walking distance of residents of the district, it

determined that based on the entire record "we cannot find that there is no need for this neighborhood grocery store." The court noted, in this regard, that the proposed store would be used by residents when others were closed, and that its location near the City limits would provide more convenient service for persons entering or leaving the City for whom it would be either the first or last available store with such services.

The parties presented extensive evidence and testimony on the issue of need, much of which was conflicting. The City places great stock in its evidence that other convenience stores with similar business hours already operate within the nearby commercial and central business districts. Yet, the City's planning and zoning officer and its former city manager both testified without contradiction that the proposal, if approved, would represent the only facility providing both convenience items and gasoline at the pump within the planned residential district. Wesco's expert also offered his opinion that, notwithstanding the existence of other grocery and convenience stores in the general area, the proposal would serve the needs of local residents, some of whom might otherwise be required to use personal or public transportation. Neither the ordinance nor the evidence required the trial court to adopt the City's benchmark of need based upon the existence of other convenience stores within 1000 feet of the proposed facility. Rather, the court could examine the evidence more closely to determine whether other stores provided comparable conveniences to residents throughout the district. The record evidence, in sum, supports the court's finding that the proposed facility would provide services to district residents not otherwise offered. As to need within the City as a whole, the evidence also supported the court's conclusion that the proposed store, located at the "gateway" to the City, would provide a conve-

---

[1] The court approved in part and denied in part the site-plan proposal for the single-dispenser application. The site-plan for the four-dispenser proposal application was not before the court.

nient stop for residents and visitors entering or leaving. We conclude, accordingly, that credible and reasonable evidence supported the court's findings and conclusions. They must, therefore, be affirmed. See *Highgate*, 157 Vt. at 315, 597 A.2d at 1281.

A closer question is whether the court's findings adequately addressed the ordinance criteria requiring a finding of need within the "district primarily and the City of Barre secondarily." The court prefaced its discussion with a quotation of the provision in question, and separately addressed the issues of need within the district, and within the City as a whole, reflecting the order of concern embodied in the ordinance. The overall framework of analysis thus demonstrates that the court was mindful of, and applied, the requisite statutory analysis. Although we believe that better practice in these circumstances would have been to address and weigh the two needs considerations in more direct and explicit terms, we conclude that the findings were adequate.

## II.

The City also contends the court erred in defining and characterizing certain uses under the ordinance. As noted, Wesco sought in its initial application to convert the existing automotive-repair building to a retail store, and to convert its gasoline pumps from full serve to self-service. Wesco's second application sought to convert the existing building to a neighborhood grocery store and to replace the existing pumps with one pump. The court appeared to treat both applications as seeking conversion to a neighborhood grocery store, which the ordinance allows as a conditional use within the district. Although the ordinance does not specifically define neighborhood grocery store, retail stores are defined generally under the ordinance as the "[c]ustomary use of enclosed restaurant, cafe, shop and store for the sale of goods at retail,"

excluding "gasoline service and motor vehicle repair service." A gasoline station is defined as a building or land that is used "primarily for the sale of motor vehicle fuel." The definition also provides: "A lot on which more than one gasoline or motor fuel pump or dispenser is located, is a gasoline station, if gasoline or motor fuel is offered for sale to the public." Reading these terms and definitions together, the court concluded that a neighborhood grocery store was not within the definition of a retail store, and therefore gasoline service at the site was not expressly excluded, and further found that the proposed use was not a gasoline station — which was not a use permitted in the district — because it called for only one gasoline dispenser.[2] The City challenges these findings.

Our standard for reviewing the environmental court's interpretation of a zoning ordinance is whether the construction is clearly erroneous, arbitrary, or capricious. See *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). Even under this deferential standard, however, we are unable to concur in the court's interpretation. Absent any separate definition, we discern no basis for excluding a neighborhood grocery store, which indisputably offers goods for sale at retail, from the general retail-store definition. Nor is there any basis for concluding that the proposed use did not involve "gasoline service." See Random House Unabridged Dictionary 1750 (2d ed. 1993) ("service" defined as "the supplying or supplier of

---

[2] Although the court's findings concerning the single-pump or dispenser clearly concerned only the second application, the court failed to draw this distinction, and approved both conditional use applications. Evidently, the court treated the first application for conversion of the four-pump configuration from full service to self-service as a permissible continuation of a nonconforming use of the property as a gasoline station.

utilities or commodities"). Nor can we agree with the court's ruling that the proposal fell outside the definition of a gasoline station because it was limited to one motor fuel "pump or dispenser." The court reasoned, in this regard, that the plain meaning of pump or dispenser is the above-ground housing containing the hoses that dispense gasoline to the vehicle. Therefore, despite the fact that the single gasoline "housing" proposed by Wesco contained several hoses and more than one automobile fueling position, the court found that the proposed use was not a gasoline station under the ordinance.

We cannot agree that the ordinance is plain and unambiguous in this regard. It is altogether unclear whether "pump or dispenser" refers to the hoses dispensing fuel, or the housing containing the hoses. Thus, the court was empowered to look to other sources for meaning. See *Slocum v. Department of Social Welfare*, 154 Vt. 474, 478, 580 A.2d 951, 954 (1990) (when ambiguity renders plain meaning rule unavailing, court may turn to other aids of statutory construction). The record here contained the testimony of the City's zoning and planning administrator, who explained that the exception was designed for small volume gasoline usage by local industries with their own fleets of trucks, not for single pump retail sales. Read in this light, any gasoline service to the public, regardless of the number of pumps dispensing the fuel, would be subject to regulation as a gasoline station, and simultaneously excluded from regulation as a retail store under the ordinance's definition of that term. This interpretation appears to most fully harmonize the various parts and purposes of the ordinance. See *Tarrant v. Department of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999) (legislative intent must be determined through statute considered as a whole). Accordingly, we conclude that the court erred in evaluating the proposal as a conditional-use neighborhood grocery store, rather than as a proposal to alter a preexisting nonconforming service and gasoline station to another nonconforming use within a planned residential district.

## III.

The City next contends the environmental court exceeded its authority in addressing the conditional use applications. "The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader." *In re Torres*, 154 Vt. 233, 235, 575 A.2d 193, 195 (1990). Thus, the court was empowered to address only those matters properly considered by the City's planning commission and board of adjustment. Under the City's zoning ordinance, the commission and board are composed of the same members, but each body performs distinct functions. As the trial court noted, the ordinance provides that applications for uses not otherwise permitted in planned residential districts must be evaluated and approved by the planning commission, and that "after such approval" the applicant may apply for a conditional use permit from the board of adjustment. Criteria to be considered by the planning commission include the proposal's location, environmental impact, need, and generation of traffic within the district, as well as its effect on the health and safety of the district's inhabitants. In granting approval, the commission is authorized to submit recommendations to the board of adjustment for inclusion in the conditional use permit.

If the planning commission approves the application, the City's ordinance provides that the board of adjustment must then evaluate the impact of the proposed conditional use upon the City generally, including whether it will adversely affect existing or planned community facilities, the character of the area affected, traffic

on roads and highways in the vicinity, and ordinances and bylaws of the City then in effect.

Wesco's initial application for conditional use approval of a neighborhood grocery store and conversion to a self-service gasoline station was considered at a meeting of the City's planning commission on December 7, 1995. A transcript of the meeting reveals that the planning commission chair opened the hearing by explaining that the application involved a conditional use, which required the action of "both bodies," i.e., the planning commission and the board of adjustment. The chair outlined the criteria under the ordinance for a conditional use in a planned residential district, and testimony was taken from the applicant, the applicant's attorney, residents of the neighborhood, and others on the need for the proposed grocery store, the traffic impact of converting to a self-service station, and the environmental impact on the residents of the district. One of the commission members underscored his belief that the key criterion "that we as a Planning Commission should analyze is [whether there is] a need for additional grocery outlets on Washington Street." Another member noted several additional criteria under the ordinance for conditional uses, and the chair explained that if the commission approved the application, "then we would adjourn and re-meet as the Board of Adjustment and then address those issues."

At the conclusion of the hearing, the commission, as noted, voted to deny the application. The minutes of the meeting indicate that "[n]o action was taken by the Board of Adjustment due to the Planning Commission's decision." Wesco's second application was considered by the planning commission at a hearing in April 1996. The commission issued a written decision again withholding approval. On the same day, the board issued a brief order stating that the conditional use application was denied "[b]ased on the lack of positive findings by the Commission."

In light of this procedural history, it is apparent that neither of Wesco's applications received the requisite approval of the planning commission under the criteria for conditional uses in a planned residential district, and therefore neither application progressed to an actual hearing before the board of adjustment to consider the separate criteria for conditional use approval under the ordinance. Although the board purported to issue a decision on the second application, that decision merely recited that the application had been denied because of the lack of positive findings by the commission. We are thus compelled to conclude that the environmental court exceeded its authority in purporting to consider issues relating to the conditional use applications that the board — under the ordinance — could not, and did not, address. See *Torres*, 154 Vt. at 235, 575 A.2d at 195 (court's power is only as broad as that of planning commission and zoning board of adjustment).

Recognizing this procedural impediment, Wesco urges this Court to hold that the provision of the City's zoning ordinance requiring preliminary planning-commission review and approval of uses otherwise excluded from planned residential developments is invalid under state law. Wesco notes that the City has zoning authority only in accordance with, and subject to, the terms and conditions imposed by the state in granting the power to zone, see *In re White*, 155 Vt. 612, 618, 587 A.2d 928, 931 (1990), and that the power to approve conditional use permits is statutorily vested in the board of adjustment. See 24 V.S.A. § 4407(2). Accordingly, Wesco contends that this provision of the City's ordinance constitutes an unauthorized delegation of power to the planning commission.

We considered a similar contention in *In re Patch*, 140 Vt. 158, 437 A.2d 121

(1981). There, as here, a local zoning ordinance required a preliminary finding by the planning commission that a proposed conditional use conformed with the same general character as those permitted in the district, and would not be detrimental to other uses in the district. *Id.* at 175, 437 A.2d at 129. Rejecting a claim of "unauthorized delegation" to the planning commission, we explained that "[t]he ordinance very carefully retains in the board of adjustment the only authority to grant approval for the issuance of conditional use permits. It is required to hold hearings and make findings, as required by 24 V.S.A. § 4407(2)." *Id.* Distinguishing *Town of Westford v. Kilburn,* 131 Vt. 120, 126, 300 A.2d 523, 527 (1973), which had invalidated an ordinance requiring the preliminary approval of private landowners within 1000 feet of the applicant's property, we noted that the planning commission was the "municipal body responsible for the preparation of this very [zoning] ordinance, and a body with statutorily recognized functions in connection with these very permits." *Patch,* 140 Vt. at 175, 437 A.2d at 129. Accordingly, we concluded that the ordinance did not represent an invalid delegation of power. See *id.*

Here, similarly, the City's zoning ordinance reserves final authority to approve conditional use applications in the board of adjustment, while charging the planning commission — "the body primarily responsible for planning in the town," *In re Cottrell,* 158 Vt. 500, 505, 614 A.2d 381, 383 (1992) — with the task of ensuring that proposed uses in planned residential districts conform with the needs, residential character, and safety of the inhabitants of such districts. Accordingly, as in *Patch,* we conclude that the ordinance is not invalid.

Citing *Torres* and *In re Maple Tree Place,* 156 Vt. 494, 594 A.2d 404 (1991), Wesco also asserts that the court was authorized to address the conditional use applications because the City had warned a meeting of both the planning commission and the board. These decisions, however, stand only for the principle that "the superior court is limited to consideration of the matters properly warned as before the local board." *Maple Tree Place,* 156 Vt. at 500, 594 A.2d at 407; see also *Torres,* 154 Vt. at 235, 575 A.2d at 195. They do not support Wesco's claim that the court may address any matter so long as it has been properly warned, regardless of other procedural requirements. Stated differently, proper notice may be a necessary, but it is not a sufficient, precondition to the court's exercise of authority.

Wesco also contends that the board of adjustment was compelled to address the applications under the ordinance, which provides that upon receiving a conditional use application, the board "shall set a date for public hearing." We do not read this provision, however, as superseding the ordinance's plain requirement that proposed conditional uses in planned residential districts receive preliminary planning-commission approval before consideration by the board.

Finally, Wesco contends that the ordinance is irrational, and therefore invalid, because the City's planning commission and board of adjustment are composed of the same people and perform duplicative functions. As noted, however, there is no statutory impediment to the procedures established under the ordinance, and while their standards may overlap, each body performs distinct functions, the planning commission focusing upon the proposal's consistency with, and impact upon, the residential character of the district, and the board looking at broader impacts within the City as a whole. Accordingly, we cannot conclude that the ordinance is arbitrary or irrational. See *In re Letourneau,* 168 Vt. 539, 544, 726 A.2d 31, 35 (1998) (courts will not interfere with zoning unless it clearly and beyond dispute is unreasonable, irrational, arbitrary, or discriminatory).

In summary, we hold that the court erred in addressing the conditional use applications absent prior consideration by the board of adjustment.[3] For the same reason, we conclude the court erred in approving Wesco's site-plan application absent prior consideration by the planning commission.

*The judgment is reversed, and the matter is remanded for further proceedings consistent with the views expressed herein.*

**Katz, Supr. J.,** concurring and dissenting. I concur in all but one portion of the Court's opinion. On the issue of "need," I would hold, contrary to the Court's conclusion, that the trial court's findings were inadequate, and therefore remand for further findings on the issue consistent with the pertinent provisions of the City of Barre's zoning ordinance.

Under the City's ordinance, an applicant for a conditional use permit within a planned residential district must demonstrate, among other things, "the need for the use in the district primarily and the City of Barre secondarily." Although the trial court's decision reveals that it was aware of the provision, its analysis and findings on the question of need for the proposed convenience store were severely truncated. The court observed preliminarily that a showing of need does not require the planning commission, or the

court, to make "any centralized economic decisions for the development of the City." Its analysis then consisted, in its entirety, of the following:

> Although there are a number of other grocery stores of various types in the City, some of which are within reasonable walking distance of the residents of this Planned Residential District, we cannot find that there is no need for this neighborhood grocery store. In particular, we find from the evidence that a store in this location will be used when other such stores are closed, in preference to traveling to a more distant store with convenient hours, and that it will be used by persons entering or leaving the City for whom it will be either the first or the last available store with such services.

This is deficient, in my view, in several respects. First, the rather convoluted conclusion that "we cannot find that there is no need for this neighborhood grocery store" does not equate to a finding that there *was* a need. The double-negative construction utilized by the court ("cannot find no need") is simply not the equivalent of an affirmative finding of need, as required by the ordinance. See *Chatham v. State*, 265 S.E.2d 835, 837 (Ga. Ct. App. 1980) ("'findings' couched in the double negative fall short of . . . affirmative answers"). The ordinance required a showing by the applicant of a public need for the use, not a demonstration by the City of "no need." See *In re Molgano*, 163 Vt. 25, 28, 653 A.2d 772, 774 (1994) (noting applicant's burden of proof to satisfy zoning bylaw criteria for construction of office buildings). Thus, if for no other reason, I would reverse and remand for the requisite findings on this fundamental question.

Second, the court provided no analysis or support for its unstated assumption that evidence of potential "use" of the

---

[3] The City also contends that, in granting the conditional use applications, the court improperly failed to consider policies set forth in the City's Master Plan, Economic Action Plan, and zoning ordinance. Having concluded that the court erred in the first instance in addressing and approving the applications absent prior consideration by the board, we need not address this issue. Accordingly, we express no opinion on the City's claim that the court erroneously ignored the zoning policy of phasing out preexisting nonconforming uses.

proposed convenience store was sufficient to establish a real showing of community need. It is only natural that a planned commercial enterprise will find *some* market, otherwise it would not be undertaken. If mere use were the equivalent of public need, however, the criterion would be rendered meaningless. See, e.g., *Degnan v. Monetti*, 509 A.2d 277, 282 (N.J. Super. Ct. App. Div. 1986) (reversing zoning board's decision to grant variance, court held that mere showing of potential use of planned commercial development would render zoning ordinance "meaningless . . . [I]f there are special reasons for a variance because of the nature of the use it should be because the use inherently serves the public good or welfare."). Thus, I would remand for sufficient findings on this point, as well.

Finally, the City's ordinance plainly required a two-tiered analysis of need, with primary consideration to be accorded the criterion of need within the district, and secondary consideration to be accorded the question of need within the City as a whole. Nothing in the trial court's findings, however, suggests that it actually engaged in the kind of balancing contemplated by the ordinance. Indeed, the findings — such as they are — suggest that the evidence was skewed in favor of a showing of need within the City rather than the district. There is some logical and evidentiary support for the court's finding that a convenience store located at the "gateway" to the City might serve travelers just entering or leaving the City confines. Its finding that district residents would use the proposed store when others were closed, however, is eviscerated by the court's subsequently imposed condition requiring the applicant to close at 9:00 p.m., the same time as other stores in the general area. Thus, the findings are deficient in their analysis of need under the particular framework established by the zoning ordinance.

This Court has observed, in a different context, that a mere recitation of facts in a trial court's findings is not sufficient for meaningful appellate review; "it is important for the appellate court to know *how* the trial court weighed the facts and blended the standards to arrive at the conclusion. In other words, we need to review the explanation as well as the found facts to determine if the application of the criteria to the facts is sound." *Nickerson v. Nickerson*, 158 Vt. 85, 89, 605 A.2d 1331, 1333 (1992). The court's findings here fail this test. They provide neither a sufficient factual recitation nor an adequate explanation of how the court applied the ordinance criteria to the facts. Meaningful appellate review is thus frustrated.

I concede that this Court has some measure of discretion on whether to accept a deficient analysis, in circumstances suggesting the trial court recognized the existence of the issue. But we are here deciding whether a gasoline filling station should be imposed on a residential zone, where it may persist for decades. This is a significant issue. The City has not had its day in court on this issue. As we are remanding the case for other reasons, I would afford the City the opportunity for a reasoned decision demonstrating that the ordinance has been correctly applied.

Accordingly, I would reverse the trial court's determination on the issue of need, and remand for additional findings. I am authorized to state that Justice Skoglund joins in this dissent.