**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| Perras & Sons, Inc. Preliminary Plat | } } } } | Docket No. 29-2-06 Vtec |

## Decision on Pending Motions

Appellant-Applicants Ron and Deb Perras, d/b/a/ Perras & Sons, Inc., appealed from a decision of the Town of Georgia (Town) Planning Commission dated January 26, 2006, denying Appellant-Applicants' application for preliminary plat approval for a 9-lot subdivision and planned residential development (PRD) in the Lakeshore Residential and Recreational (L-2) and Agricultural, Rural Residential (AR-1) zoning districts.

Several pre-trial motions are now pending before this Court. Interested Person Gary Kupperblatt moves for summary judgment on Questions 1–8 of Appellant-Applicants' Statement of Questions; Appellant-Applicants oppose Mr. Kupperblatt's motion and move for summary judgment solely as to their Question 9; Mr. Kupperblatt cross-moves for summary judgment on Question 9; and the Town opposes Appellant-Applicants' motion for partial summary judgment and cross-moves for summary judgment on Question 9.

Appellant-Applicants are represented by Paul S. Gillies, Esq.; the Town is represented by Amanda Lafferty, Esq.; Interested Persons Richard and Karen Babcock are represented by Thomas Walsh, Esq.; Interested Persons Rodolphe and Elizabeth Vallee are represented by Steven R. Ducham, Esq.; and Interested Persons Gary Kupperblatt, Fred Grimm, Heather Grimm, and Edmund Wilcox represent themselves.

## Factual Background

The following material facts are undisputed unless otherwise noted:

1.  Appellant-Applicants own sixty-three± acres of land located on Lake Brook Drive in the L-2 and AR-1 zoning districts.

2.  Lake Brook Drive is a "private road" as that term is defined in the Town Zoning Regulations.

3.  On May 16, 2005, Applicant-Appellants met with Mark Smith, the Town Planner, to discuss a sketch plan concept for their property, after which the Town Planner referred the

1

matter to the Planning Commission for sketch plan review. On May 17, 2005, the Town Planner sent a "follow-up" letter to Appellant-Applicants, attached to the Town's cross-motion for summary judgment as Attachment 2, in which he informed Appellant-Applicants that "the Sketch Plan meeting is an informal discussion" and that "Sketch Plan is not a public hearing."

4. Appellant-Applicants submitted an 11″ by 17″ sketch plan graphic to the Planning Commission, which considered the sketch plan during a regularly scheduled meeting held on June 28, 2005, the minutes of which are attached to the Town's cross-motion for summary judgment as Attachment 4. The submitted sketch plan graphic, attached to the Town's cross-motion for summary judgment as Attachment 3, shows nine residential lots and one thirteen-acre "conservation easement area." The June 28th sketch plan meeting was not warned to the public, although it was noticed to adjacent landowners and posted in the Town offices in accordance with Subdivision Regulations § 300.

5. On August 10, 2006, the Planning Commission sent Appellant-Applicants a "follow-up" letter, attached to the Town's cross-motion for summary judgment as Attachment 5, informing Appellant-Applicants that the proposed project as presented at the June 28th hearing did not comply with the zoning and subdivision regulations[1] and suggesting options to bring the project into compliance. The August 10th letter stated that the Planning Commission "expect[s] you to continue at sketch plan phase," noted that Appellant-Applicants would have to submit a new sketch plan together with a $100 sketch plan fee because the "former sketch plan has expired," and informed Appellant-Applicants that their new sketch plan would be reviewed on September 13, 2005.

6. On September 13, 2005, the Planning Commission reviewed Appellant-Applicants' revised sketch plan at a regularly scheduled meeting, the minutes of which are attached to the Town's cross-motion for summary judgment as Attachment 6. The minutes indicate that the revised sketch plan had been reconfigured to remove one residential lot, resulting in eight residential lots with 17.8 acres of common land. Numerous issues regarding the proposed project's compliance with the regulations were raised and discussed at the meeting, both by participants and Planning Commission members. In response to a question posed by abutting landowner, and now Interested Person, Richard Babcock regarding curtain drains and

---

[1] Specifically, Zoning Regulations § 5010.3(7), limiting private dead-end roads to 1,000 feet, and Subdivision Regulations § 800.5, limiting all dead-end roads to 1,000 feet.

2

driveway lengths, Commission Chair George Bilodeau "reiterated that this is just a sketch plan [review]."

7. In a letter dated September 21, 2005, attached to the Town's cross-motion for summary judgment as Attachment 7, Commission Chair George Bilodeau informed Appellant-Applicants that the "Planning Commission has classified your proposal as a major subdivision" and recommended certain procedural steps to be taken by Appellant-Applicants "prior to application for Preliminary Plat." The September 21st letter was not characterized as a decision, and contained no information regarding a right of appeal.

8. On December 12, 2005, Appellant-Applicants applied to the Planning Commission for preliminary plat approval for a nine-lot[2] subdivision and PRD, consisting of eight residential lots ranging from 1.9 to 21.7 acres in size and one open space/common land lot of 19± acres in size.

9. The Planning Commission held a warned public hearing on the preliminary plat approval application on January 10, 2006 and issued a decision denying the application on January 26, 2006.

10. The proposed subdivision and PRD, as presented in the preliminary plan application submitted on December 12, 2005, consists of nine lots: eight residential lots ranging in size from 1.9 acres to 21.7 acres, and 19.02 acres area of common land containing a Class 3 wetland. The residential lots are located easterly of Georgia Shore Road. Appellant-Applicants propose to widen a private road called Lake Brook Drive running easterly from Georgia Shore Road and to construct a cul-de-sac at the easternmost end of Lake Brook Drive.

11. Eight separate driveways connect each of the residential lots to the cul-de-sac: five driveways run parallel to each other from the easterly side of the cul-de-sac for approximately 100′ and then diverge toward the five proposed house sites lying northerly and easterly of the cul-de-sac. Three other proposed driveways connect to the southerly portion of the cul-de-sac and provide access to the three proposed house sites southerly of the cul-de-sac. This design is somewhat unique and resembles the widened, fanning shape of a river delta system. A copy of Appellant's site map is reduced and attached to this Decision for reference.

---

[2] The record reveals some confusion about the total number of lots proposed for Applicants' 63± acre parcel. The site plan now before the Court was submitted with the preliminary plat application on December 12, 2005. This site plan shows eight driveways serving as access for eight lots proposed for development, with an additional ninth lot containing 19.02 acres, not presently served by a driveway and labeled as "Common Land."

**Discussion**

**I.      Is the pending application properly before the Court?**

Interested Person Gary Kupperblatt moves for summary judgment on Questions 1–8 of Appellant-Applicants' Statement of Questions.  Question 1 asks: "Whether this eight-lot[3] subdivision with eight units and common land meets the requirements of Georgia's subdivision regulations and zoning bylaws as a PRD, in satisfying dimensional standards pursuant to Section 6010 of the bylaws and Section 700.3 of the regulations or in qualifying for the flexibility standards available through the bylaws."  Mr. Kupperblatt argues that Question 1 must be answered in the negative, because the Appellant-Applicants' application failed to comply with Zoning Regulation § 6010.4.1 and § 6010.2.3(a).

Section 6010.4.1 established the specific standards for a PRD proposed in the AR-1 and L-2 zoning districts.  It states that, in "determining the allowed number of lots or density of a property [proposed for a PRD development], the applicant will be required to demonstrate that the same number of requested lots could be supported in a conventional subdivision," including consideration of sewage, water, road frontage, and land features (original emphasis indicating defined terms removed throughout this opinion).  Section 6010.2.3(a) requires applicants to submit a "statement setting forth the nature of all proposed modifications of the existing zoning regulations and the proposed standards and criteria which the applicant proposes for the development."

Appellant-Applicants did not submit a statement of proposed modifications and proposed alternative standards and criteria with their application for preliminary plat approval.  Thus, Mr. Kupperblatt argues, the Court must conclude that Appellant-Applicants' application fails to comply with the requirements of the regulations as written, and in particular, with § 6010.4.1.

Section 6010.4 governs applications for PRD in the AR-1 and L-2 zoning districts, and imposes stricter requirements for PRDs in those districts than in other districts.  Compare § 6010.4.1 (requiring applicants for PRDs in the AR-1 and L-2 districts to "demonstrate that the same number of requested lots could be supported in a conventional subdivision") with § 6010.5.2 (stating that the maximum allowable density for PRDs in the AR-2 and AR-3 districts

---

[3] Even though Appellant-Applicants' plan actually calls for the creation of nine lots, Mr. Kupperblatt characterized the application as being for eight lots, since only eight lots are planned for development.  The ninth lot is proposed to be conserved and undeveloped.

4

will be established by calculating "the total size of the subject parcel divided by the minimum lot size for the zoning district.").

Mr. Kupperblatt argues that "a conventional 8-lot subdivision is impossible for this parcel" primarily because "the frontage requirements for [a] conventional subdivision (200′ in L-2 [under § 3150.4], 250′ in AR-1 [under § 3050.4]) cannot be met for eight homes[,] even with the most generous estimate of frontage on Lake Brook Road." Mr. Kupperblatt therefore moves for summary judgment on Question 1 and moves to dismiss Questions 2–8 because those Questions "pertain to determinations that are secondary due to the inappropriate number of lots in the Site Plan."

Appellant-Applicants argue in opposition that the frontage requirements applicable under §§ 3050.4 and 3150.4 are not absolute, but may be reduced by the Planning Commission pursuant to § 5010.4, which states that the Commission "may approve reduced frontage requirements for lots on cul-de-sacs or other dead ends of public or private roads." Appellant-Applicant argues that because the Commission has the discretionary authority to reduce frontage requirements, "there is no violation of Section 6010.4.1's requirement that the applicant demonstrate a conformance to existing zoning regulation for a 'conventional subdivision.'"

There is no evidence that the Planning Commission considered the proposed development under § 6010.4.1, rather than § 6010.5.2. Nor is there any evidence that Appellant-Applicants ever proposed a modification of the applicable frontage requirements pursuant to § 5010.4.

It is for the Planning Commission to determine in the first instance whether the language in § 6010.4.1 requiring a showing that the same number of requested lots could be supported "in a conventional subdivision" allows for a showing that the proposed number of lots could be supported in a "conventional subdivision" after any applicable discretionary modification has been applied, or whether the term "conventional subdivision" instead refers to a subdivision without any such modification.

As it appears that Appellant-Applicants did not request and the Planning Commission did not consider the specific number of lots a "conventional subdivision" would support on Appellant-Applicants' property, we must conclude that this Court does not have the jurisdictional authority to now consider Appellant-Applicant's request for modification of the road frontage requirements under § 5010.4. If we were to consider and decide, prior to review

5

by the appropriate municipal panel, whether the requested number of lots could be supported in a conventional subdivision, we would do so in clear violation of this Court's jurisdictional limitations. See Simendinger v. City of Barre, 171 Vt. 648, 652 (2001) (mem.) (noting that the Environmental Court cannot consider issues not first addressed at the municipal board level).

Thus, we conclude that the Planning Commission must first be given an opportunity to review and offer a conclusion on what the term "conventional subdivision" refers to in connection with a PRD subdivision application in the applicable zoning districts. We therefore remand the pending preliminary plat application back to the Planning Commission, so that Appellant-Applicants may have the opportunity to "demonstrate that the same number of requested lots [proposed in their PRD subdivision] could be supported in a conventional subdivision" under § 6010.4.1. Upon remand, the parties will have a full opportunity to convince the Planning Commission of whether it is appropriate to consider the availability of modifications under § 5010.4 when calculating how many lots would be allowed in a "conventional subdivision," as that term is used in § 6010.4.

Because we must remand this matter for a determination of whether the proposed subdivision and PRD meets the requirements of § 6010.4.1, which requires a demonstration by the Applicants that the same number of lots could be supported in a conventional subdivision in the AR-1 and L-2 zoning districts, we decline to address Questions 2–8 of Appellant-Applicants' Statement of Questions.

Appellant-Applicants' motion for partial summary judgment on Question 9, however, raises an important question of law that is addressed below.

## II.     Does sketch plan review have finality?

Appellant-Applicants' Motion for Partial Summary Judgment relates solely to the question of "[w]hether the Town's decision at Sketch Plan, which was unappealed, constitutes a binding decision that must direct and inform the process of Preliminary Plan review." Appellant-Applicants contend that the letter from Planning Commission Chair Bilodeau, dated September 21, 2005, informing Appellant-Applicants that the "Planning Commission has classified your proposal as a major subdivision" and recommending certain procedural steps to be taken by Appellant-Applicants "prior to application for Preliminary Plat," constitutes a final, unappealed decision that is binding on the Town, and on this Court, "for what it says and does not say." Appellant-Applicants' Mot. for Partial Summ. J. at 2. While Appellant-Applicants do

6

not specifically so state, they imply that because the September 21st letter did not conclude that the proposed subdivision and PRD fails to meet the general requirements of the zoning and subdivision regulations, the Planning Commission is barred from later concluding at the preliminary plat review stage that the proposed subdivision and PRD fails to meet those requirements.

Appellant-Applicants cite the subdivision regulations at § 320 in support of their argument that binding determinations are made at the sketch plan stage. Section 320 states in pertinent part that "[t]he Commission shall study the sketch plan to determine whether or not it conforms to, or would be in conflict with, the Plan, the Zoning Regulations and any other By-Laws then in effect, and shall, where it deems necessary, make specific recommendations for changes in subsequent submissions. Within a reasonable timeframe, such written recommendations shall be sent to the applicant."

Section 320 plainly imposes a duty on the part of the Planning Commission to study the applicants' submitted sketch plan and determine whether it conforms to the Town's regulatory scheme, but that determination is made for the purpose of making recommendations to aid the applicant in preparing for preliminary review. The determination of conformity under § 320 need not be, and was not in this case, shared with the applicant. The purpose of sketch plan review is "classification and initial discussion," Subdivision Regulations § 300. Sketch plan approvals "shall not constitute approval of a subdivision plat," Subdivision Regulations § 330, but are "merely authorization for the applicant to file a preliminary plat or final plat application," id.

This Court recently held that "preliminary determinations that are not successfully appealed from provide for finality on certain legal determinations properly made at that stage of the subdivision review proceeding," In re: Simpson Dev. Corp., Docket No. 54-3-05 Vtec (Vt. Envtl. Ct., June 27, 2006), slip op. at 13. In Simpson, the Town of Norwich Development Review Board (DRB) had issued a decision during preliminary review,[4] approving the applicants' preliminary subdivision and PRD application. The preliminary decision issued by the Norwich DRB included Findings of Fact, Conclusions of Law, Proposed Conditions, Recommended Changes, and Requests for Further Documentation. One of those findings

---

[4] The Town of Norwich requires that subdivision applications go through four stages of review: a pre-application meeting, preliminary review, intermediate review, and final review.

7

specifically stated that "the proposed subdivision plan generally conforms to applicable subdivision review standards . . . and with other municipal regulations." Simpson at 13. Then, at the intermediate review stage, the DRB denied the applicant's proposed PRD. Appellants successfully argued on appeal that the Town was bound by the DRB's preliminary determination that the proposed project was generally allowed on the proposed location, subject to any conditions imposed at later stages of the subdivision review process.

The preliminary decision in Simpson, like the preliminary decision on appeal here, was issued as a "Notice of Decision," following a warned public hearing, and containing information regarding appeal rights. By contrast, the September 21st letter sent to Appellant-Applicants following sketch plan review was not issued as a decision, was not preceded by a warned public hearing, and contained no findings, conclusions, or information regarding appeal rights. Indeed, Georgia's subdivision regulations specifically provide that "[s]ketch plans shall not be publicly warned . . ., as they do not constitute Public Hearings." Subdivision Regulations § 300. One consequence of the lack of a warned public hearing is that potential interested parties have no notice of the proceeding. If Appellant-Applicants' argument were to prevail, interested parties would be bound by a "decision" of which they had no prior notice or opportunity to be heard. Such an outcome is contrary to both reason and law. See 24 V.S.A. § 4463(a) ("Before any plat is approved, a public hearing on the plat shall be held by the appropriate municipal panel after public notice.").

Sketch plan review is used in many Vermont municipalities as an initial opportunity for the appropriate municipal panel to view a planned subdivision or PRD and make some initial determinations as to whether the proposed project should be reviewed on a minor or major basis. The Georgia Subdivision Regulations employ a similar procedure and do not require its Planning Commission to announce a final determination of conformance with the Bylaws and Regulations at the sketch plan stage. See Subdivision Regulations §§ 300 and 330.

We therefore conclude that the determination authorized and required at the sketch plan stage, namely the determination of whether the proposed project should be viewed as a major subdivision, is a determination that becomes final if not successfully appealed from. However, the Planning Commission is not required or authorized to express a final determination of whether a proposed project may generally conform to the municipal regulations, or what

8

conditions may be required to do so, until an application is made for preliminary plat review under the Georgia Regulations.

For the foregoing reasons, we hereby **GRANT** summary judgment to Mr. Kupperblatt as to Questions 1 through 8. We also **GRANT** summary judgment to both Mr. Kupperblatt and the Town of Georgia as to Question 9 and **DENY** Appellant-Applicants' motion for summary judgment on that same Question.

The pending preliminary plat application is hereby **REMANDED** to the Georgia Planning Commission for reconsideration in accordance with this Decision. This concludes the proceedings on the pending application before this Court, as noted in the accompanying Judgment Order.

Done at Berlin, Vermont this 18th day of October, 2006.

_____
Thomas S. Durkin, Environmental Judge