# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeals of Wesco, Inc      }   Docket Nos. 209-12-97
                                           }   Vtec, 175-10-01 Vtec, and
                                           }   24-1-02 Vtec
                                           }
                                           }

## Decision and Order on Cross-Motions for Partial Summary Judgment

Appellant is represented by Jon Anderson, Esq. and William Simendinger; the City is represented by Oliver L. Twombly, Esq. Interested persons Marjorie Sichel, Eugene Clermont, and Percy Labor represent themselves and have not filed memoranda on the pending motions.

Appellant and the City have each moved for summary judgment on the above three consolidated cases, involving the zoning and site plan applications for the conversion of a repair garage[1] with gasoline service, to a convenience store with gasoline service, at 169 Washington Street in the City of Barre. Appellant seeks partial summary judgment on the following issues: 1) whether any zoning approval is required for Appellant to change from full- to self-service gasoline service; 2) whether any zoning approval is required for Appellant to change from a repair garage component to a convenience store component; 3) whether any zoning approval is required for Appellant to remodel the interior and some exterior features of the building for these uses; and 4) whether any of these proposals trigger the City's parking and loading regulations. The City seeks partial summary judgment in its favor on these issues and also on whether the proposed canopy requires a variance to be considered for approval.

The following facts are undisputed unless otherwise noted.

Wesco owns a lot at 169 Washington Street in the City's Planned Residential zoning district, on which it operates a full-service gasoline station and automobile repair garage. The lot contains a single building, and a single gasoline island with four gasoline pumps. The building includes two repair garage bays, and an associated small office space. The parties agree that the building is a preexisting structure and that the use of the lot for gasoline sales and automobile service is a preexisting use with respect to the adoption of the Planned Residential zoning district.

The use of the property as a gasoline station[2] is not an allowed use in the Planned Residential zoning district (§ 5.14.02). The use of the property as a gasoline station is therefore a pre-existing, nonconforming use subject to the provisions of § 5.1.4(a) and (c).

The existing building also is a pre-existing, noncomplying structure, subject to the provisions of § 5.1.4(b) and (c), because it extends into the front setback and into one side setback. The gasoline pump island also is located within the front setback area.

The lot itself is also a pre-existing lot, nonconforming lot as to lot size, that is, it is smaller than the minimum lot size in the district. § 5.14.03(5). However, the Barre zoning regulations allow an undersized lot to be further developed for the purposes allowed in the district, " provided that the coverage of the building is not enlarged." § 5.1.05(3). <u>Appeal of Mullen</u>, Docket No. 187-9-00 Vtec (Vt. Envtl. Ct. March 27, 2002).

Wesco proposes to convert the usage of the pumps from full-service operation by employees to self-service operation by customers; to sell convenience store items, including deli and prepared foods, from the building; to remodel the interior of the building and the doors and windows to eliminate the service bays and accommodate the proposed convenience store uses; and to construct a canopy over the existing pump island.

In interpreting § 5.1.04 to carry out the intent of the ordinance, it is important to bear in mind the explicit statement of the intent of this section to balance the rights of the landowner against those of the surrounding neighborhood: "to maintain the property rights of a parcel of land which has a nonconforming use or noncomplying structure, while at the same time protecting the property rights of the surrounding neighborhood."

<u>Conversion of gasoline dispensing equipment from full-service to self-service</u>

The proposed change from full-service to self-service gasoline service, considered independently of the uses in the building and of any changes to the building, does not involve any structural alterations to the building or any change in location of the pump island. It does not involve any change in the use category of the use as a gasoline station. It does involve the replacement of the pumps themselves with more modern equipment.

It therefore falls within the provisions of § 5.1.04(c)(5). If the new pumps, adapted to self service, do not increase the number of fueling positions, and are not of greater size, capacity or productive capacity, the change may be accomplished without any zoning approval. To that extent, summary judgment is GRANTED to Appellant-Applicant as to this issue.

However, undisputed facts have not been provided to the Court to allow the Court to determine whether the changed equipment is of greater size, capacity or productive capacity, although we recognize that it probably is not, as no suggestion has been made of a proposal to change the size of the underground gasoline storage tanks or piping. If the conversion to self-service equipment <u>is</u> of a greater size, capacity or productive capacity, the conversion may still be made, under § 5.1.04(c)(5), but it then requires approval of the DRB under that section, and a showing that the change does not intensify the nonconforming use as described in that section.

<u>Interior remodeling and exterior door and window remodeling as changes to a noncomplying structure</u>

The proposed remodeling of the building to accommodate the convenience store use as opposed to the former auto service station use must also be considered as a change to a nonconforming structure. This is a separate consideration from whether the <u>use</u> of the building for a convenience store may be considered for permit approval (discussed below) and is also a separate

consideration from whether the use of the building for a convenience store requires additional parking spaces (also discussed below). This is also independent of whether the remodeling requires site plan approval; the parties agree that it does require site plan approval.

Alteration of a noncomplying structure is regulated by §§ 5.14.02(b) and (c) of the zoning regulations. Section 5.1.04(b) allows a noncomplying structure to be used and continued, but does not allow it to be " moved, enlarged, altered, extended, reconstructed or restored unless <u>such changes comply</u> with the standards of the district in which such structure is located." (Emphasis added).

The building is not being moved, enlarged, extended or restored. It is being reconstructed or altered, as the term alteration is defined in § 5.2.03, in that it is undergoing structural change or rearrangement, at least as to the windows and doors. This remodeling of the building constitutes an alteration of the building even though the changes are not proposed to change the footprint or enlarge the building. Under § 5.1.04(b), this remodeling is only allowed if the changes comply with the standards of the district. The building is a nonconforming structure only as to the front and side setbacks. If no remodeling alterations occupy more of these setbacks[3] than did the existing building, then the remodeling alterations comply with § 5.1.04(b). To that extent, summary judgment is GRANTED to Appellant-Applicant as to § 5.1.04(b). However, undisputed facts have not been provided to the Court to allow the Court to determine whether the remodeling alterations occupy any more of the front or side setbacks than did the existing building.

The City also argues that § 5.1.04(c)(1) prevents the interior remodeling because it will result in increased use and in increased floor area open to the public. Section 5.1.04(c)(1) allows either a nonconforming use or a noncomplying structure to be maintained if the maintenance " does not result in increased floor area or increased use."

The term "maintain" is itself specifically defined in § 5.2.03 as "to preserve from failure or decline." The renovation of the building interior does not qualify as maintenance of the existing structure nor as maintenance of the existing gasoline station use nor as maintenance of any existing convenience store use. It appears that § 5.1.04(c)(1) does not apply.

However, even if it were to apply, the proposed renovation does not result in any increase in the ' floor area' of the building, as that term is defined[4]. That is, the proposal satisfies § 5.1.04(c)(1) as to floor area, even though the amount of the floor area open to the public will increase.

The City also argues that the increase in the area open to the public will result in the increased use of the building by the public, that is, in the intensification of the use in the building. Generally a mere increase in the intensity of use of a noncomplying structure is not prohibited, unless the bylaw specifically so provides. See <u>In re Miserocchi</u>, 170 Vt. 320, 327 (2000). Not only is § 5.1.04(c)(1) silent regarding an increase in intensity of use, but another subsection of this same section: § 5.1.04(c)(5), does specifically regulate changes in equipment on the basis of whether the change ' intensifies' a nonconforming use. We must presume that the ordinance intended not to do so when regulating maintenance under § 5.1.04(c)(1).

Accordingly, summary judgment is GRANTED to Appellant-Applicant as to the interpretation of § 5.1.04(c)(1).

Construction of a canopy over the existing pump island

The City argues that the proposal to construct a limited canopy over the pump island is impermissible because the pump island is already within the front setback and therefore the canopy would violate the front setback. Wesco argues that the canopy may be allowed for safety reasons under § 5.1.04(c)(2), which allows an alteration to a nonconforming use or noncomplying structure " in order to address considerations of energy, safety, environment and health so long as such alteration does not result in increased floor area or increased use."

The pump island is an existing structure, but not a building[5], located within the front yard setback. A canopy placed over the pump island would be measured as a building violative of the front yard setback, as a canopy meets the definition of a building under the Barre zoning regulations. The pump island is also a nonconforming use in the district. Therefore, Wesco may apply for DRB approval to alter the nonconforming use represented by the pump island[6] by adding a canopy to it, under § 5.1.04(c)(2). To that extent, summary judgment is GRANTED to Appellant-Applicant as to this issue.

However, undisputed facts have not been provided to the Court to allow the Court to determine whether such approval should be granted, and summary judgment is DENIED as to both parties on the merits of that application. Moreover, unless such approval has been requested of the DRB in any of the above-captioned appeals, it is not before the Court in the first instance.

Conversion of the use of the building from automobile service use to convenience store use

Wesco argues first that no additional approval is needed to sell convenience store items within the use category of "gasoline station." In the alternative, Wesco also argues that convenience store items (soda and cigarettes, as well as automotive items) were sold from the facility[7] prior to the adoption of the 1974 regulations, and that therefore the convenience store aspect of the proposal should also be treated as a pre-existing, nonconforming use.

Much confusion appears to have resulted from both parties' unstated assumption that only one use may be located on the lot in question. However, unlike many towns' zoning regulations, nothing in the Barre City zoning regulations limits the use of a lot to a single use category. See, Appeal of Stanak and Mulvaney, Docket No. 101-7-01 Vtec (Vt. Envtl. Ct., February 28, 2002) slip op. at 4. For example, if a ' professional office' is an allowed use in a particular district, then a landowner may apply for a permit for that use in a building that also houses a residential use.

A proposal that falls into more than one use category, such as the present proposal, must obtain approval under each and every use category for which it qualifies. Some use categories are mutually exclusive and some are not; some are defined in § 5.2.03 and some are not. For example, a modern automobile dealership may have components that fall within the use category of ' motor vehicle sales showroom,' the use category of ' motor vehicle lot,' the use category of ' car wash,' and the use category of vehicle ' service and repair.' Each of these components falls

within a difference class of use under § 5.2.05, and may be allowed or not in a particular zoning district. A new automobile dealership would have to obtain approval for all of its component use categories.

In addition, under the Barre City zoning regulations, the district regulations for each district may contain additional use categories which are provided for in the district although they are not defined in § 5.2.03 and are not listed within the classes of use in § 5.2.05. (E.g., drive-through facilities in the Central Business District (§ 5.18.02(c)).)

The use category of "retail store" is defined as a use within an enclosed building, and specifically excludes retail uses with an external component such as a fast-food drive-up service, gasoline service, or motor vehicle repair service. This exclusion protects districts (in which the retail establishments themselves are an allowed use) from the additional burdens posed by these external components, unless the external component use is specifically provided for in the regulations and is also specifically approved for the particular location. Thus, fast food retail sales in a restaurant or retail store without a drive-through could be approved in various locations in which a restaurant or retail store use is allowed, while a drive-through could only be added in the Central Business District, and then only if the drive-through obtained its own approval. That is, the need for a separate approval of the drive-through does not disqualify the fast-food restaurant or retail store from obtaining approval as a restaurant or retail store.

The contrary interpretation would mean that a gasoline station could never sell anything at retail, even windshield wiper blades or ice scrapers, an interpretation that would lead to an absurd result. Indeed, the use of the word 'primarily' in the definition of gasoline station suggests that other items are expected to be sold at retail from a gasoline station. The use category of "gasoline station" is defined as a building or land "used primarily for the sale of motor vehicle fuel," regardless of whether motor vehicle accessories and motor oil are also sold at retail from the property, and regardless of whether other vehicle-related services such as a car wash or repair garage are also provided on the property. This definition then subjects any property qualifying as a gasoline station to the special regulations for gasoline stations in § 5.10.03, as well as the regulations for any other use on the property. Thus, a combined gas station and convenience store is not relieved from meeting the special regulations applicable to any gasoline station. See, Appeal of Heffernan, Docket No. 170-8-00 Vtec (Vt. Envtl. Ct., Sept. 24, 2001) (slip op. at 5-6). However, under the particular Barre City zoning regulations, nor is it relieved from obtaining approval for the other included use categories.

The parties did not have the occasion to discuss or point out this unusual feature of the Barre City zoning regulations in their presentations to the Vermont Supreme Court that resulted in the Supreme Court's memorandum decision in Simendinger v. City of Barre, 171 Vt. 648 (2001), in which the Court stated that the Environmental Court "erred in evaluating the proposal as a conditional-use neighborhood grocery store, rather than as a proposal to alter a preexisting nonconforming service and gasoline station to another nonconforming use within a planned residential district." (Emphasis added.) In fact, the proposal must be evaluated both as a conditional use neighborhood grocery store (in an existing nonconforming building) and as a proposal to alter a preexisting nonconforming service and gasoline station to another nonconforming use.

The present proposal falls within both the use category of ' gasoline station' and the use category of ' neighborhood grocery store.' The gasoline station aspects of the proposal are treated as a preexisting nonconforming use, regulated specifically under § 5.1.04, with the intent to balance the preexisting rights of the landowner to continue that business against those of the surrounding landowners to have property in the district conform to uses allowed in the district.

However, the ' neighborhood grocery store' aspects of the proposal cannot be treated as a preexisting nonconforming use that is merely increasing the " product mix," as argued by Wesco. Even assuming a preexisting level of sales as claimed by Wesco, from a soda vending machine and a cigarette vending machine, plus the sale of incidental automotive items, and assuming that those sales were never discontinued under § 5.1.04(a)(3), they are simply not substantial enough to establish a preexisting neighborhood grocery store use. See, Town of Shelburne v. Kaelin, 136 Vt. 248, 252 (1978) (citing Town of Chester v. The Country Lounge, Inc., 135 Vt. 165, 167 (1977)).

Therefore, to add the neighborhood grocery store use to the existing gasoline station use, Wesco must obtain approval of the DRB under § 5.14.02(b), including consideration of all the factors in § 5.14.02(c). Accordingly, summary judgment is DENIED to Appellant-Applicant as to this issue, and is GRANTED in PART to the City.

Wesco also argues that its proposed conversion of the building to convenience store use does not have to meet the parking and loading space requirements of Article 7 of the zoning regulations, because under § 5.7.01(e) nonconforming uses are exempt. However, as discussed above, only the use of the property for a automotive service garage with gasoline service is a preexisting nonconforming use. Even if the preexisting use included the incidental sales of some convenience store items from vending machines, the use of the property as a neighborhood grocery store was not preexisting. If the neighborhood grocery store use were to be approved as an additional use for the property, § 5.7.01(e) would not apply to that newly added use, and therefore the parking/loading requirements are applicable to that use. Accordingly, summary judgment is DENIED to Appellant-Applicant as to this issue, and is GRANTED in PART to the City.

However, we also note for the parties' guidance that § § 5.7.01(c) and (d), and § 5.7.02(a) provide for DRB approval of reduced parking under appropriate circumstances. Unless such approval has been requested of the DRB in any of the above-captioned appeals, it is not before the Court in the first instance.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both Appellant-Applicant' s and the City' s Motions for Partial Summary Judgment are granted in part and denied in part, as discussed above. We have scheduled a telephone conference on September 3 or 4, 2002, to discuss the scheduling of remaining proceedings (see enclosed notice).

Done at Barre, Vermont, this 7th day of August, 2002.

_____
Merideth Wright
Environmental Judge


**Footnotes**

1.

2.

3.

4.

5.

6.

7.