**State of Vermont**
**Superior Court—Environmental Division**

=======================================================================
# E N T R Y   R E G A R D I N G   M O T I O N
=======================================================================

**In re King's Daughters Home, Inc. Permit**          **Docket No. 173-12-11 Vtec**
**(Appeal of Development Review Board Decision granting garage demolition permit)**

Title:  Cross Motions for Summary Judgment (Filing Nos. 1 & 2)

Filed:  May 3, 2012

Filed By:  Appellants Michael S. and Daphne M. Gawne

Response in Opposition to Appellants' Motion for Summary Judgment filed on 5/30/12 by
     Appellee/Applicant King's Daughters Home, Inc., together with a Cross-Motion for
     Summary Judgment

Reply and Response in Opposition to Applicants' Cross-Motion for Summary Judgment filed on
     6/21/12 by Appellants Michael S. and Daphne M. Gawne

 _X_ Granted (as to Appellee/Applicant's motion)     _X_ Denied (as to Appellants' motion)

        Michael S. and Daphne M. Gawne ("Appellants") have appealed a November 16, 2011
decision by the City of Saint Albans Development Review Board ("DRB").  In its decision, the
DRB denied Appellants' appeal of a permit granted to King's Daughters, Inc. ("Applicant") to
demolish a garage and replace it with a paved or gravel area on property owned by Applicant
at 10 Rugg Street in Saint Albans, Vermont.  Specifically, Appellants challenge the DRB's
determination that the City of Saint Albans Zoning Administrator ("ZA") properly granted
Applicant a permit without first requiring DRB approval of a site plan.  Appellants and
Applicant each moved for summary judgment on this issue, which is the only issue before the
Court in this appeal.

        For the purpose of putting the pending motions into context, we recite the following
facts, which we determine to be undisputed unless otherwise noted.

1.    Applicant operates an elder care facility at 10 Rugg Street in the City of Saint Albans
      ("City"), which is located within the City's Low Density Residential District.
2.    Appellants own the adjoining property at 16 Rugg Street.
3.    Applicant's property at 10 Rugg Street currently includes a detached structure with two
      garage doors.[1]
4.    On September 26, 2011, Applicant submitted a Zoning and Construction Permit
      Application to "[t]ear garage down and remove cement floor and replace with gravel or
      pavement."  (City of Saint Albans Zoning and Constr. Permit No. 1109195D, filed with
      this Court on May 3, 2012.)
5.    Applicant intends to use the proposed gravel or pavement area for parking.

_____

[1] Appellants contest whether the garage on Applicant's property is properly defined as either a "Private
Garage" or a "Public Garage" under the City's Land Development Regulations.  We address this dispute
below but refer to the structure at issue as "the garage" throughout this decision.

## Discussion

We will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). When considering cross-motions for summary judgment, we look at each motion individually and give the party opposing a motion the same benefit as a non-moving party. City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

In this case, both Applicant and Appellants seek summary judgment on the sole issue of whether the DRB must approve a site plan before the ZA can issue a permit to Applicant for the demolition of the garage at 10 Rugg Street, the removal of the garage's cement floor, and the replacement of the floor with gravel or pavement.[2] Although Applicant and Appellants have disputed certain of one another's facts, there is no dispute of facts material to the question at issue in this appeal. Our review of the pending motions for summary judgment will therefore center on whether Applicant or Appellants are entitled to judgment as a matter of law based on our interpretation of the Land Development Regulations for the City of St. Albans, Vermont ("Regulations").

When interpreting zoning ordinances, courts must give effect to the intent of the relevant legislative body. See Town of Killington v. State, 172 Vt. 182, 188 (2001); In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991) (applying the rules of construing statutes to the interpretation of zoning ordinances). Where the plain language of the contested law is unclear or ambiguous, courts look beyond the contested wording to ascertain legislative intent. See In re Margaret Susan P., 169 Vt. 252, 262 (1999); Town of Killington, 172 Vt. at 189. We examine "the general context of the statutory language, the subject matter, and the effects and consequences of our interpretation," Shea v. Metcalf, 167 Vt. 494, 498 (1998) (internal citation omitted). We keep these legal doctrines in mind as we consider the pending application, its conformance to the Regulations, and Appellant's concerns in this appeal.

## I.    Applicant's Proposed Activity Does Not Require Major Site Plan Approval

Under the Regulations and depending on the scope of a proposed project, a permit applicant may first need to seek approval from the DRB of either a major or a minor site plan before the ZA grants the applicant a permit. In this case, Appellants first argue that Applicant's proposed activities require the DRB to approve a major site plan before the ZA grants Applicant a permit. Under Regulations § 603.1.B.1(c), approval of a major site plan is required before a zoning permit may be issued for "[a] site plan that involves new construction or enlargement of any structure that changes off-street parking, landscaping or other requirements of Section 603."

---

[2] In their Statement of Questions, Appellants also describe the permit issued by the ZA to Applicant as "authorizing . . . the construction of a barrier in place of the garage to act as screening." (Appellant's Statement of Questions, filed Dec. 2, 2011). However, Applicant's Zoning and Construction Permit Application, approved by the ZA on September 27, 2011, makes no mention of the construction of a screening barrier. Whether or not Applicant subsequently offered to construct a screening barrier, the scope of our review of Applicant's permit application is limited to the authority sought by that application. Thus, we do not consider the construction of a screening barrier because authority to do so is not sought by this application.

(emphasis added). If the proposed activity does not involve the construction or enlargement of a structure, major site plan approval is not necessary. Appellants contend that the pavement or gravel Applicant proposes to install in lieu of the current garage constitutes a structure as defined by the Regulations. For the reasons stated below, we do not adopt Appellants' assertion that Applicant must first receive major site plan approval from the DRB.

Regulations § 202 defines "structure" as "[a]ny construction, erection, assemblage or other combination of materials upon the land, including swimming pools, necessitating pilings, footings or a foundation attachment to the land." Open-air parking surfaces, such as gravel or pavement, do not appear to fall under the definition of "structure;" other definitions within Regulations § 202 support this conclusion. For example, the definitions of both "Site Plan" and "Site Plan, Minor" use "structure" and "parking" as separate and distinct terms, and the implication that it is possible to "modify the arrangement of parking" without constructing or enlarging "any structure" suggests that parking surfaces are not structures. Regulations § 202. Moreover, § 202 distinguishes between a "Parking Garage or Structure" ("[a] building or structure consisting of more than one level and used to park or store motor vehicles") and a "Parking Lot" ("[a]n off-street, ground level open area"). Id.

Based on the language contained within Regulations § 202, we conclude that the term "structure" as defined by the Regulations does not include gravel or pavement used to cover an open-air parking area. Accordingly, we conclude that Applicant's proposed activity does not require major site plan approval under Regulations § 603.1.B.1(c).[3]

## II.     Applicant's Proposed Activity Does Not Require Minor Site Plan Approval

Under Regulations § 603.1.B.1(a), the DRB must grant minor site plan approval for any project that, although not including new construction or enlargement of structures, will "modify the arrangement of parking, landscaping or other requirements of Section 603." Appellants argue that Applicant's proposed activity will modify the arrangement of parking and landscaping on Applicant's property. For the reasons stated below, we conclude as a matter of law that Applicant's proposed activity will not modify the arrangement of parking or landscaping on-site under Regulations § 603.1.B.1(a), and thus, that Applicant's proposed activity does not require minor site plan approval prior to the issuance of a zoning permit.

### a.     Applicant's Proposed Activity Does Not Modify the Arrangement of Parking

In its cross-motion for summary judgment, Applicant argues that the proposed replacement of the garage with a paved or gravel area used for parking does not modify the arrangement of parking on-site, since both uses constitute identically-sized parking areas. Appellants contend that Applicant's proposed activity will modify the arrangement of parking on-site because it will allow cars on the property to park in a different configuration. Appellants also claim that the garage is not a "Private Garage" or "Public Garage" as defined in the Regulations, and therefore is not a parking area recognized by the Regulations. We find Applicant's argument more persuasive.

We first conclude that, under the Regulations, the garage qualifies as a "Private Garage" and therefore is currently a parking area. Regulations § 202 defines a "Garage, Private" as "[a]

---

[3]   Because we conclude that Applicant's proposed activity does not involve the construction or enlargement of any structures, we also conclude that Applicant is not required to seek minor site plan approval under Regulations § 603.1.B.1(b), which requires such approval for a project "that involves new construction or enlargement of existing structures and does not modify parking and/or landscaping or other requirements of Section 603." (emphasis added).

building or accessory to a principal structure whether attached or independent of the principal structure, providing for storage of motor vehicles, in which there is no business for profit." Appellants emphasize in their filings that the garage is not currently used to store motor vehicles and has not been so used for some time. However, Appellants do not contest that the garage is *capable* of providing storage of motor vehicles, or that the garage itself is not currently used for business or profit. In this case, Appellants' interpretation of the term "Private Garage" as limited to those garages in which a motor vehicle is currently stored is unreasonably narrow.[4] Because we recognize the garage on Applicant's property as a "Private Garage" as defined by the Regulations, we also conclude that it is a parking area for the purposes of the Regulations. Therefore, the demolition of the garage and its replacement with an open-air gravel or paved parking area does not represent an inherent change in the use of the space currently occupied by the garage; in both cases, the space is capable of being used to park vehicles.

Appellants also suggest that the demolition of the garage will potentially change the precise location of parked cars on the property, thereby modifying the "arrangement of parking" and triggering review of a minor site plan. See Regulations § 603.1.B.1(c). Even assuming that the demolition of the garage causes drivers to change their parking habits within the parking area as a whole, such a change does not require site plan review in this case. Once again, we look beyond the narrow interpretation urged by Appellants and to the general context of the Regulations. See <u>Shea</u>, 167 Vt. at 498. While the term "modification to the arrangement of parking" could mean nearly any change in the way motor vehicles park on a property, Regulations § 603.B goes on to state that "[n]o zoning permit . . . shall be issued for any . . . <u>significant change</u> in off-street parking . . . until final site plan approval shall have been obtained." (emphasis added). We conclude that, based on the undisputed facts presented, any potential change in the configuration of parking on Applicant's property as a result of the demolition of the garage will be insignificant and will therefore not need site plan approval prior to the issuance of a zoning permit.

### b. <u>Applicant's Proposed Activity Does Not Modify Landscaping</u>

Appellants claim that the demolition of the garage also modifies landscaping on Applicant's property. Appellants reason that the term "landscaping" in Regulations § 603.1.B.1(a) encompasses "not only landscaping, but also buffering and screening." (Appellants' Supplemental Mem. at 3, filed June 21, 2012). Appellants point to Regulations § 516, which directs the DRB, in cases where the DRB must consider landscaping, to take into account the need to screen views of unsightly areas and to create buffers between non-residential and residential properties. Because the garage currently has the effect of blocking the view from Appellants' property of Applicant's parking and garbage areas, Appellants contend that the garage itself is essentially landscaping. Thus, the demolition of the garage "in and of itself modifies landscaping." (Appellants' Supplemental Mem. at 4, filed June 21, 2012). We find Appellants' argument unpersuasive.

Regulations § 201 states that terms not specifically defined in the Regulations or in the Vermont Planning and Development Act (24 V.S.A. Chapter 117) are defined by "the standard Webster's definition." The term "landscaping" is not defined in either the Regulations or the Vermont Planning and Development Act. The Merriam-Webster Online Dictionary groups "landscaping" under the verb "landscape," meaning "to modify or ornament (a natural

---

[4] Similarly, the fact that cars are often parked in front of the garage, rendering the garage at times unusable for parking under Regulations § 515.1.F, does not change the inherent classification of Applicant's garage as a "Private Garage" under the Regulations.

landscape) by altering the plant cover."  Merriam-Webster Online Dictionary – Landscaping, http://www.merriam-webster.com/dictionary/landscaping (last visited Nov. 16, 2012).  Under this definition, landscaping refers to plantings or vegetation.  Moreover, Regulation § 516, broadly titled "Landscaping, Buffering, Setbacks and Grading," does not expand the term landscaping beyond plantings, as Appellants contend, but simply includes a number of considerations the DRB must take in reviewing a project for site plan approval, which is not required in this case.

We conclude that the term "landscaping" contained within the Regulations does not encompass structures such as Applicant's garage.  The demolition of such a structure is not a modification to landscaping under Regulations § 603.1.B.1.  We therefore conclude that, under the Regulations, minor site plan approval is not required prior to the ZA issuing a zoning permit authorizing Applicant to demolish its garage, remove the garage floor, and replace the floor with gravel or pavement.

## Conclusion

For the reasons detailed above, we **GRANT** Applicant summary judgment and hold as a matter of law that the activity for which Applicant seeks a permit—the demolition of the garage, the removal of the garage's cement floor, and the replacement of the floor with gravel or pavement—does not necessitate DRB approval of either a major or minor site plan under the Regulations before it is permitted by the ZA.  Consequently, we **DENY** Appellants' competing motion for summary judgment.

Appellants raise several collateral issues that are outlined in Mr. Gawne's Affidavit, filed in support of Appellants' summary judgment motion.  We have not addressed any issues that are beyond the scope of the pending application, since the only permit authority requested was to demolish the existing garage, remove its cement floor, and replace it with gravel or pavement.  Any development or change of use beyond that authorized by the challenged permit is beyond the scope of this appeal.

Given that our entry of summary judgment for Applicant addresses all justiciable issues raised by Appellants in this appeal, we have prepared and signed the attached Judgment Order in Applicant's favor, thereby concluding the current proceedings before this Court.

_____          _____November 21, 2012_____
Thomas S. Durkin, Judge                                                            Date

===============================================================================

Date copies sent: _____                                    Clerk's Initials: _____

Copies sent to:

   Appellants Daphne M. and Michael Gawne

   Interested Person Mary F. Pappas

   Attorney Daniel P. Richardson for Applicant King's Daughters Home, Inc.