STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

In Re Bjerke Zoning Permit Denial {     {     {     Docket No. 72-5-11 Vtec

### Decision on the Merits

Alan A. Bjerke (Appellant) seeks a zoning permit to make certain modifications to property he owns in the City of Burlington (the City).  Appellant submitted a zoning permit application (the Application) to the City of Burlington Zoning Administrator (the ZA) on July 7, 2010.  On March 4, 2011, the ZA denied the Application.  Appellant appealed the ZA's decision to the City of Burlington Development Review Board (the DRB), which also denied the Application on May 3, 2011.  Appellant's timely appeal of the DRB's May 3 decision is currently before this Court.

In support of his appeal to this Court, Appellant submitted a Statement of Questions containing three questions.  In an April 17, 2012 Entry Order and associated March 22, 2012 Decision, we disposed of Appellant's Question 1 by granting summary judgment on that Question in favor of the City.[1]  Thus, the remaining scope of this appeal is limited to Appellant's Questions 2 and 3, which relate to whether he should receive a permit for his proposed modifications pursuant to the Burlington City Development Ordinance (the CDO).  Questions 2 and 3 are stated as though this were an on-the-record appeal;[2] however, this is a *de novo* trial.  In this proceeding, we are not concerned with what the DRB did below.  Rather, we must consider anew whether the Application complies with the CDO.  We therefore interpret Appellant's Question 2 to ask whether CDO § 5.4.8 applies to the Application and Appellant's Question 3 to ask whether the Application complies with the CDO as a whole.

The Court conducted a site visit to the subject property on July 26, 2012, followed by a merits hearing.  The hearing was held at the Vermont Superior Court, Chittenden Civil

---

[1] Question 1 asks whether the Application was deemed approved under CDO § 3.2.5 and 24 V.S.A. § 4448(d).

[2] Appellant's Question 2 asks, "Did the City of Burlington inappropriately apply Burlington Zoning Ordinance 5.4.8 in a mandatory fashion?"  (Appellant's Statement of Questions, filed June 6, 2011.)  Appellant's Question 3 asks, "Did the City of Burlington inappropriately deny Appellant the permit applied for July 7, 2010?"  Id.

Division, Burlington, Vermont. Both Appellant, appearing pro se, and the City, represented by Kimberlee J. Sturtevant, Esq., participated in the site visit and the hearing.

During the July 26, 2012 hearing, the Court admitted a certified copy of the CDO pursuant to Vermont Rule of Evidence (V.R.E.) 902, which provides that certified copies of public documents can be admitted without foundation as self-authenticating. Appellant retained a standing objection to the admissibility of the CDO. After the close of evidence, the City filed a letter with the Court stating that a portion of the CDO had been omitted from the copy admitted and received in evidence at trial. In response, Appellant renewed his objection to the admissibility of the CDO and filed a motion to strike. Because Appellant met his burden under V.R.E. 902 by proving that the admitted copy was not what it was certified to be—a true, accurate, and complete copy of the CDO—the Court granted his motion and struck the CDO from the record.

Appellant specifically cited the CDO in his Statement of Questions, however. In light of this fact and because Appellant, as the Applicant, bears the burden of proving that his application complies with the CDO,[3] the Court, on its own motion, held a subsequent hearing on November 8, 2012 on whether to reopen the evidence in this matter. At this hearing, the Court concluded that it should reopen the evidence and immediately conducted a partial new trial pursuant to V.R.C.P. 59(a) and (d) on the limited issue of whether the CDO, referenced by both parties in their filings and trial testimony, may be admitted into evidence. At this subsequent hearing, the City produced a second certified copy of the CDO and, at the Court's request, checked it to make sure that no pages were missing before offering it into evidence. Because submission of a certified copy comports with V.R.E. 902, the Court admitted the CDO into evidence. See V.R.C.P. 44.1 (establishing procedures under which a court may take notice of municipal ordinances).

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. On July 7, 2010, Appellant submitted an application for a zoning permit to make certain modifications to a duplex residential structure (the duplex) he owns at 145 Lakeview Terrace, Burlington, Vermont.

---

[3] During this appeal, Appellant did not challenge the existence of the CDO.

2

2.      Appellant resides on the first floor of the duplex and rents the second floor to one or more tenants.

3.      At the time of the filing of the Application with the City, July 2010, the subject duplex was 50 years old or older.

4.      The location of the duplex on the subject lot is unchanged since its original construction.

5.      The design of the original house remains intact, although an addition and a deck were subsequently added to the structure.

6.      The duplex's original roofline is still discernible, and an observer can still see the original house massing, height, and scale.

7.      Significant original architectural details of the duplex remain, including but not limited to, the slate roof and its original pitch, small irregularly spaced windows, and hipped roof porticos at secondary entrances on the south side of the duplex.

8.      Appellant seeks to extend the roofline of the duplex's rear addition fifteen and a half feet towards the east end of the original structure.  The Application also proposes to replace and reconfigure the hipped roof porticos at secondary entrances on the south side of the duplex with gable roof canopies in an effort to replicate the primary entrance on the east side of the duplex.  Finally, the Application requests approval to replace some of the duplex's original small, irregularly spaced windows with larger, more evenly spaced windows.

9.      The proposed modifications to the duplex will eliminate a knee wall and improve the functionality of living space within the two units.

10.     The roof eaves of the original roof are notably different than the newer and proposed roof eaves.

11.     The subject property is located within the City's Medium-Density Residential District and the City's Design Review Overlay District.

12.     The overall character of the neighborhood surrounding the duplex is residential, although there are a few commercial uses nearby.

13.     A new single structure housing 25 condominium units at 237 North Avenue, Burlington adjoins the subject property to the north.

14.     237 North Avenue was formerly a commercial building and fronts on North Avenue, which is a Class II highway.

15.     145 Lakeview Terrace is a residential property fronting on a Class III residential street.

3

**Conclusions of Law**

Appellant appeals the DRB's denial of his application for a zoning permit to make certain modifications to property he owns in the City. Appellant's Statement of Questions in this appeal raises three Questions, two of which remain for this Court's review. Appellant's Question 2 asks whether CDO § 5.4.8 applies to his application. Appellant's Question 3 asks whether his application for a zoning permit complies with the CDO. We address these questions in turn, and conclude, as a matter of law, that CDO § 5.4.8 does apply to the Application and that the Application fails to comply with CDO §§ 5.4.8 and 6.3.2. Accordingly, we **DENY** Appellant's request for a zoning permit.

## I.  The Application is Subject to CDO § 5.4.8.

CDO § 5.4.8 applies to buildings or sites that are eligible for listing on the National or State Registries of Historic Places. To be eligible for listing, a building must display the three following conditions. First, the building must be 50 years old or older. CDO § 5.4.8(a)(1). Second, the building must possess "significance in illustrating or interpreting the heritage of the City, state or nation in history, architecture, archeology, technology and culture because," among other considerations, it maintains "an exceptionally high degree of integrity, original site orientation and virtually all character defining elements intact." CDO § 5.4.8(a)(2). Finally, the building must "possess a high degree of integrity of location, design, setting, materials, workmanship, feeling, and association." CDO § 5.4.8(a)(3). Appellant contends that CDO § 5.4.8 does not apply to the duplex and that the Application should not be subject to the City's development standards for historic properties. In light of the three conditions in CDO § 5.4.8(a), however, we conclude that the duplex at 145 Lakeview Terrace is eligible for listing on Vermont's Registry of Historic Places and is therefore subject to CDO § 5.4.8.

### 1.  The duplex is 50 years old or older – CDO § 5.4.8(a)(1).

During the July 26 merits hearing, two witnesses testified credibly that Appellant's duplex was at least 50 years old at the time of the filing of the Application with the City. First, Ms. L. Diana Carlisle credibly testified to her personal knowledge of the homes on Lakeview Terrace. Ms. Carlisle moved to 107 Lakeview Terrace approximately 10 years ago and continues to reside there. In 1958, Ms. Carlisle's mother moved to and subsequently lived at 117 Lakeview Terrace. Ms. Carlisle visited her mother at 117 Lakeview Terrace in 1958, and at that time, Ms. Carlisle observed the structure at 145 Lakeview Terrace.

4

Second, Mary O'Neil[4] testified that she is the City's project manager for Mr. Bjerke's Application and, as such, she was responsible for looking into the duplex's history and reviewing the City's file for Appellant's property. Once the Application was assigned to Ms. O'Neil, she completed a preliminary review of the City's file to determine which sections of the CDO might apply to the Application. She also talked with the Appellant regarding compliance with the CDO. With Appellant's approval, Ms. O'Neil ultimately ordered review of the Application by the City Design Advisory Board (DAB).[5] As part of this review, and considering the architecture of the Appellant's duplex, Ms. O'Neil determined that the structure was constructed in the early 20th century. Additionally, Ms. O'Neil reviewed the City Lister's card for the subject property and noted that the duplex was sold or transferred in 1941. Based upon this information, Ms. O'Neil offered her credible opinion at the merits hearing that, at the time Appellant filed the Application with the City in July 2010, the duplex was older than 50 years.

Based on the testimony of these two witnesses, we conclude that at the time Appellant filed the Application to modify 145 Lakeview Terrace, the duplex was 50 years old or older.

2. The duplex possesses significance in illustrating or interpreting the heritage of the City because the building maintains an exceptionally high degree of integrity, original site orientation, and virtually all character defining elements intact – CDO § 5.4.8(a)(2)(d).

The duplex at 145 Lakeview Terrace possesses significance in illustrating or interpreting the heritage of the City and its architecture for the following reasons. First, the location of the duplex on the subject lot is unchanged since its original construction. Second, the design of the original structure remains intact, although an addition and deck were subsequently added. Even with the addition on the west side of the duplex, the original roofline is still discernible, and one can still observe the original house massing, height, and scale. Third, significant original architectural details remain, including but not limited to, the slate roof and its original

---

[4] Mary O'Neil is currently a Senior Planner with the City. From 2001 to 2004, Ms. O'Neil worked with the City's Assessor's Department as a land records and property transfer research associate. Beginning in 2004, Ms. O'Neil became an Associate Planner and Coordinator for the Certified Local Government Program with the City's Planning and Zoning Department. As set forth in the City's Exhibit B which is Mary O'Neil's multi-page resume, Ms. O'Neil has considerable education, training, and experience qualifying her as having expertise with historic properties. See V.R.E. Rule 702 (stating requirements for expert testimony).

[5] The DAB is an independent board established by CDO § 2.5.1. Upon request, the DAB will review certain applications, including those involving historic buildings or sites, and provide written advice and recommendations. Ordinance § 2.5.1(b).

pitch, small irregularly spaced windows, and hipped roof porticos at secondary entrances on the south elevation.

We therefore conclude that the duplex possesses significance in illustrating or interpreting the heritage of the City because the building maintains an exceptionally high degree of integrity, original site orientation, and many architecturally defining elements intact.

3. The building possesses a high degree of integrity of location, design, setting, material, workmanship, feeling, and association – CDO § 5.4.8(a)(3):

The duplex possesses a high degree of integrity of location as the original building footprint on the lot is unchanged, and the lot itself maintains its original location with respect to Lakeview Terrace and the neighborhood. The integrity of the design of the building remains intact with the exception of an addition to the west side of the building. The setting of the site has remained predominantly residential, with smaller sized homes. While there has been some change to the original building materials used on the duplex, such as replacement vinyl siding, a significant amount of original materials remain, such as the slate roof and wood shingled porch canopies. The overall feeling of this residential site and the building itself remain intact. Lastly, the building and the site retain their original integrity of association, especially pertaining to the residential use on the small residential street.

We therefore conclude that the duplex and the site possess a high degree of integrity of location, design, setting, material, workmanship, feeling, and association.

Based upon the evidence presented by the City, described above, and the fact that Appellant failed to provide any evidence contradicting the City's claims, we conclude that the duplex at 145 Lakeview Terrace is eligible for listing on Vermont's Registry of Historic Places. Therefore, we find that CDO § 5.4.8 applies to the Application to modify the duplex.

## II. The Application Does not Comply with the CDO.

Appellant's Question 3 asks whether his application for a zoning permit complies with the CDO. Pursuant to the CDO, no development may be commenced within Burlington without a zoning permit issued by the ZA. See CDO § 3.1.2. Development includes additions to existing buildings, alterations to building elevations, and window replacement or other changes that alter trim details or otherwise change the building's exterior appearance. CDO § 3.1.2(a). As addressed above, the duplex is eligible for listing on the State Register of Historic Places, and therefore the application to alter the duplex is subject to review under CDO § 5.4.8 –

6

Historic Buildings and Sites. Because the duplex is located within the City's Medium-Density Residential District and the City's Design Review Overlay District, in addition to the fact that it is subject to historical building standards, the application to alter the duplex is also subject to Design Review. See CDO §§ 3.4.2, 3.4.2(b)(3), 4.5.1(b)(1(B) & 5.4.8.

1. Section 5.4.8 Historic Buildings and Sites

As concluded above, the Application must comply with CDO § 5.4.8. Thus, we next consider whether the application complies with the Standards and Guidelines (Standards) contained within CDO § 5.4.8(b), which govern the review of permit applications involving historic buildings. The Standards, created to preserve the distinctive character of a historic building and its site, are a series of concepts on maintaining, repairing, and replacing historic features, as well as designing new additions or making alterations. CDO § 5.4.8(b).

Before applying the Standards to the Application at issue, we note that, according to the CDO, the Standards are "intended to be applied in a reasonable manner, taking into consideration economic and technical feasibility." CDO § 5.4.8(b). Parties in this case disagree as to the interpretation of this provision. Appellant asserts that the Standards of CDO § 5.4.8(b) are to be applied with a consideration of the economic and technical feasibility of the utility of the structure itself. Stated anther way, Appellant suggests that we should consider the economic and technical feasibility of his goal of improving the functionality of the internal living space through the proposed modifications, including improving the standing height in a shower and providing better internal lighting and ventilation.

In contrast, the City asserts that consideration of economic and technical feasibility, as required by CDO § 5.4.8(b), relates solely to the materials involved in the proposed modifications. In support of this argument, the City notes that it only reviews internal structural issues or considerations in permit applications seeking a change in use or a change in the intensity of use. Thus, because Appellant is not proposing a change in use or a change in intensity of use, the City's review of this Application only entails consideration of the external implications of the proposed modifications.

We find the City's interpretation correct. In construing a zoning ordinance, we use the same rules as in the interpretation of a statute. Blundon v. Town of Stamford, 154 Vt. 227, 229 (1990). We construe words according to their plain and ordinary meaning. See Slocum v. Dep't of Soc. Welfare, 154 Vt. 474, 478 (1990) (citing In re Hydro Energies Corp., 147 Vt. 570, 573

7

(1987)).  We consider the whole of the ordinance and try to give effect to every part.  Id. at 481.  Based upon these principals, we find nothing within CDO § 5.4.8 relating to or requiring consideration of internal use or the functionality of living space.  All of the Standards relate to external features and material considerations.  Thus, in reviewing the following Standards, we do not consider the economic and technical feasibility of the internal functionality of the duplex.

CDO § 5.4.8(b) sets forth ten Standards numbered one through ten.  We address each Standard applicable to the Application.

a.  *Standard 2*

Standard 2 states that "[t]he historic character of a property will be retained and preserved.  The removal of distinctive materials or alteration of features, spaces, and spatial relationships that characterize a property will be avoided."  CDO § 5.4.8(b)(2).

The Application's proposal to extend the roofline of the rear addition fifteen and a half feet towards the east end of the original duplex structure will extend the newer dormer roofline and either cover up or eliminate the original structure's roofline and slope.  This will remove the existing distinction between the original structure and the new addition.  It will no longer be possible to discern the original structure's historic size and character from the new addition and Appellant's proposed further modifications.

The Application also proposes to replace and reconfigure the hipped roof porticos at secondary entrances on the south side of the duplex.  These hipped roof porch canopies are historically significant characteristics of the structure.  The Application proposes gable roof canopies in an effort to replicate the primary entrance; however, such replacement would eliminate rather than retain and preserve this distinctive feature of the south side of the duplex.

We therefore conclude that the proposed alteration of the roof and replacement of the hipped roof porticos on the south side of the duplex are in conflict with Standard 2.

b.  *Standard 3*

According to Standard 3, "[e]ach property will be recognized as a physical record of its time, place, and use.  Changes that create a false sense of historical development, such as adding conjectural features or elements from other historic properties, will not be undertaken."  CDO § 5.4.8(b)(3).

The Application does not propose to add features from other historic properties to the duplex, but it does seek to expand on the more modern features of the duplex.  The proposal to

8

extend the roofline of the rear addition fifteen and a half feet towards the east end of the original duplex structure does not reflect the historic appearance and massing of the original structure, but is rather an enlargement of a newer building feature that does not have historic significance. Additionally, the reconstruction of the porch canopies from hipped to gable would be an alteration of the historically-significant entrance on the south side of the duplex that is not consistent with the duplex's historical record. Thus, we conclude that the proposed modifications are in conflict with Standard 3.

c. *Standard 5*

Standard 5 requires that "[d]istinctive materials, features, finishes, and construction techniques or examples of craftsmanship that characterize a property will be preserved." CDO § 5.4.8(b)(5). During the merits hearing, the City raised the possibility that the proposed roof modification might result in the loss of the original slate roof, a distinctive and character-defining material feature of the building. Appellant provided no evidence, either at trial or in his Application, of what the roof replacement materials will be. Without such information, we are unable to determine whether the proposed project will preserve the historic characteristics of the duplex, including its original slate roof. Because Appellant, as the Applicant, bears the burden of proving that his application complies with the CDO, we conclude that the Application fails to comply with Standard 5.

d. *Standard 6*

Standard 6 states:

> Deteriorated historic features will be repaired rather than replaced. Where the severity of deterioration requires replacement of a distinctive feature, the new feature will match the old in design, color, texture, and, where possible, materials recognizing that new technologies may provide an appropriate alternative in order to adapt to ever changing conditions and provide for an efficient contemporary use. Replacement of missing features will be substantiated by documentary and physical evidence.

CDO § 5.4.8(b)(6). Based on the evidence offered by the Appellant, the proposed modifications to the duplex are not designed to remedy building material failure, but rather to facilitate improved functionality of the internal living space. Although Standard 6 was raised at trial, we conclude that it is not applicable to the proposal.

e. *Standard 9*

Standard 9 requires that:

New additions, exterior alterations, or related new construction will not destroy historic materials, features, and spatial relationships that characterize the property. The new work shall be differentiated from the old and will be compatible with the historic materials, features, size, scale, and proportion, and massing to protect the integrity of the property and its environment.

CDO § 5.4.8(b)(9).

The proposed modification to the roof is an exterior alteration that destroys the historic spatial relationship of the duplex. The existing structure appears as primarily an older dwelling with a steep pitched roof and south facing hipped roof porticos at two secondary entrances. The existing structure also includes an addition with a more gently sloped roof added to the west end of the duplex. Some of the original windows are small and irregularly spaced. As illustrated by Appellant's Exhibit AA1, page 011, the totality of the proposed modifications results in a structure that appears to have a more gently sloped roof, larger, more evenly spaced windows, and more modern entrance canopies with a small addition added to the east end of the structure. Thus, the overall effect of the modifications is to lose the historic features and characteristics of the duplex. Much of the original structure would be consumed by the addition, and the distinction between old and new would be lost. The scale and proportion of the already existing west side addition, in combination with the proposed modifications, would dominate the old historic structure.

The integrity of the duplex's historic features and spatial relationships would be destroyed by the proposed modifications, and therefore, we conclude that the Application is in conflict with Standard 9.

f. *Standard 10*

Standard 10 provides that "[n]ew additions and adjacent or related new construction will be undertaken in such a manner that, if removed in the future, the essential form and integrity of the historic property and its environment would be unimpaired." CDO § 5.4.8(b)(10).

During the merits hearing, Appellant asserted that the new roof would simply cover the existing roof; meaning the original roof would remain intact. This assertion seems illogical, as we understand that the new section of roof is proposed to increase the interior ceiling height and improve the functionality of the duplex's interior. Further, if it is true that improvements to

the functionality of the duplex's interior can be accomplished without removing the roof, there would appear to be no need to modify the original roof, which is the most significant modification proposed in the Application.

Even if the original roof is retained in place underneath the new roof, however, we find it unlikely that the roof would be returned to its original character and design following substantial investments in time, resources, and money for construction of the new section of roof. We also find it unlikely that the proposed replacement of small windows with larger, better functioning windows would ever be reversed. Having raised these concerns, we understand Standard 10 to ask whether, if the proposed modifications are carried out, it would be possible to return the duplex to its original essential form and integrity. Although we believe it would be highly unlikely for the duplex to be returned to its original form and integrity, we conclude that it would be possible. As such, the Application complies with this standard.

Having concluded that the Application is in conflict with Standards 2, 3, 5 and 9, we conclude that the Application does not comply with CDO § 5.4.8.

2. Section 6.3.2 Review Standards

Pursuant to CDO § 3.4.2(b), Design Review is required for all development within the Design Review Overlay District (DROD), which includes 145 Lakeview Terrace. Accordingly, Appellant's project must comply with the principles and standards contained in Article 6 of the CDO. See CDO § 3.4.4, and specifically CDO § 6.3, Architectural Design Standards. Several of the design standards contained in CDO § 6.3.2 apply to the Appellant's proposed project; we omit discussion of those standards not relevant to the Application. Based on the discussion below, we conclude that the Application fails to comply with two of the architectural design standards of CDO § 6.3.2: Protection of Important Architectural Resources (CDO § 6.3.2(b)), and Quality of Materials (CDO§ 6.3.2(e)).

a. *Section 6.3.2.(a) Generally*

At the outset, Section 6.3.2(a), entitled "[r]elate development to its environment," directs that:

> Proposed buildings and additions shall be appropriately scaled and proportioned for their function and with respect to their context. They shall integrate harmoniously into the topography, and to the use, scale, and architectural details of existing buildings in the vicinity.

Appellant asserts that in considering his Application for compliance with the CDO, this Court must take into account the property immediately adjoining 145 Lakeview Terrace. Appellant offered, and the Court admitted, Exhibit AA 2, which includes a site plan and several elevations for a new single structure with 25 condominium units on this adjoining property at 237 North Avenue, Burlington. Appellant argues that the mass and scale of his modification should be considered in light of this new adjoining development. Although Appellant did not specifically direct us to a section or subsection within the CDO to support his argument, we consider Appellant's assertion with respect to CDO § 6.3.2(a) and the terms "context" and "existing buildings in the vicinity."

In response to Appellant's assertion that we must consider the condominium building at 237 North Avenue, the City argues that 237 North Avenue was formerly a commercial building and that the subject lot fronts on North Avenue, a Class II highway. Thus, the City contends that the condominium building differs from the context of 145 Lakeview Terrace, a residential property fronting on a Class III residential street with a more intimate scale and setting. Lastly, the City notes that Lakeview Terrace was originally developed as a predominantly residential neighborhood with a few commercial uses and that the street overall remains predominantly residential.

In reviewing the CDO and specifically CDO § 6.3.2, we conclude that although 145 Lakeview Terrace and 237 North Avenue share a small section of common boundary, these two properties were developed at different times, for different purposes, and with different intensities of use. Thus, as we "relate" Appellant's proposed modifications to the duplex at 145 Lakeview Terrace, we look more to the context and setting of Lakeview Terrace and its homes than to the context and setting of 237 North Avenue.

b. *Section 6.3.2(a)(1) – Massing, Height and Scale*

Design Review standard 6.3.2(a)(1) directs that in medium density residential districts, the height and massing of existing residential buildings is the most important consideration when evaluating the compatibility of additions and infill development. CDO § 6.3.2(a)(1). Furthermore, buildings should maintain consistent massing and perceived building height at the street level, regardless of the overall bulk or height of the building. Id. Buildings should maintain a relationship to the human scale through the use of architectural elements, variations of proportions and materials, and surface articulations. Id.

12

The Application's proposed modifications to the duplex will not appreciably increase the height or scale of the duplex, or bring the duplex out of conformity with the surrounding structures along Lakeview Terrace. Accordingly, we conclude that the changes proposed by the Application comply with CDO § 6.3.2(a)(1).

c. *Section 6.3.2(a)(2) – Roofs and Rooflines*

Design Review standard 6.3.2(a)(2), Roofs and Rooflines, directs that large expanses of undifferentiated roof forms shall be avoided by incorporating some variation in the roof form to lessen the impact of the massing against the sky. CDO § 6.3.2(a)(2). This standard further directs that roof eaves should be articulated as an architectural detail. Id.

The Application's proposal to extend the roofline of the rear addition fifteen and a half feet towards the east end of the original duplex structure has the effect of extending the newer roofline. The duplex's roof will remain differentiated, however, as the new and old roofs will continue to have different slopes. See Exhibit AA 1, page 011. Additionally, the entire roof will continue to have eaves overhanging the structure's walls. While the Application, if granted, will result in a change in the current character of the duplex, we conclude that the proposed changes to the building comply with CDO § 6.3.2(a)(2).

d. *Section 6.3.2(a)(3) – Building Openings*

Design Review standard 6.3.2(a)(3), Building Openings, directs that window openings shall maintain consistent patterns and proportions appropriate to the use. Importantly, the window pattern should add variety and interest to the architecture. CDO § 6.3.2(a)(3).

Under the Application, Appellant will alter the duplex's window openings to better suit interior use. The duplex's original windows are small and irregularly spaced. As illustrated by Appellant's Exhibit AA1, page 011, the proposed modifications would result in larger, more evenly spaced windows. Although such a change would affect the historic characteristics of the original duplex structure, the new windows would be appropriate to the duplex's use and maintain consistent patterns and proportions to the duplex. Thus, we conclude that the Application complies with CDO § 6.3.2(a)(3).

e. *Section 6.3.2(b) – Protection of Important Architectural Resources*

Design Review standard 6.3.2(b), Protection of Important Architectural Resources, directs that Burlington's architectural and cultural heritage shall be protected through sensitive and respectful redevelopment, rehabilitations, and infill. Where the proposed development

13

involves buildings listed or eligible for listing on a state or national register of historic places, the Appellant shall meet the applicable development and design standards pursuant to section 5.4.8. CDO § 6.3.2(b). As discussed above, the Application fails to comply with CDO § 5.4.8. Thus, we find that the Application fails to comply with CDO § 6.3.2(b).

### f. *Section 6.3.2(e) – Quality of Materials*

Design Review standard 6.3.2(e), Quality of Materials, mandates "the use of highly durable building materials that extend the life cycle of the building, and reduce maintenance, waste, and environmental impacts" in all development. Furthermore, this standard encourages owners of historic structures to consult with an architectural historian before choosing building materials. In this case, the Application provides no information on the materials Appellant plans to use in the proposed modification of the duplex, other than identifying the new windows to be used. Without such information, we cannot find that the Application complies with this design standard. Again, because Appellant, as the Applicant, bears the burden of proving that his application complies with the CDO, we conclude that the Application fails to comply with CDO § 6.3.2(e).

### Conclusion

For the reasons detailed above, we conclude that:

1. CDO Section 5.4.8 applies to the Application.
2. The Application fails to comply with the applicable portions of the CDO, including the Architectural Design Standards of Article 6; specifically § 6.3.2(b) and § 6.3.2(e), and fails to comply with the regulations pertaining to historic buildings and sites in CDO § 5.4.8; specifically Standards 2, 3, 5 and 9.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont this 14th day of February, 2013.

Thomas G. Walsh,
Environmental Judge